### HOBART MFG. CO. v. LANDERS, FRARY & CLARK.

#### No. 2466.

District Court, D. Connecticut.

Jan. 24, 1939.

Greer Marechal and Lawrence B. Biebel, both of Dayton, Ohio, and Horace L. Rockwell, of Hartford, Conn., for plaintiff.

T. Clay Lindsey and George N. Robillard, both of Hartford, Conn., for defendant.

THOMAS, District Judge.

This is a suit brought by the plaintiff to restrain infringement of U. S. Letters Patent No. 1,807,574, granted to the plaintiff, as assignee of Herbert L. Johnston, on May 26, 1931, for a meat grinder. The application for this patent was filed on December 26, 1923. The plaintiff's rights in the patent and the jurisdictional prerequisites are admitted.

Infringement is charged of all of the claims of the patent, of which claims 1, 3, 5 and 8 are representative and they read:

"1. A meat grinder of the character described comprising a chopper cylinder adapted to receive a worm therein, an inlet secured thereto and having a passage therethrough opening into said cylinder and of a length materially in excess of its width, said passage being of such cross-sectional area at a point relatively distant from said worm as to prevent the adult operator extending his fingers into contact with the worm."

"3. A meat grinder of the character described comprising a chopper cylinder adapted to receive a worm therein, an inlet secured to said chopper cylinder and having a passage therethrough of a diameter of approximately two and a quarter inches at a point approximately not less than four inches from the worm, whereby said passage is so proportioned as to length and cross-sectional area as to prevent the adult operator extending his fingers therethrough into contact with the worm."

"5. A meat grinder of the character described comprising a chopper cylinder, adapted to receive a worm therein, a hopper-receiving flange permanently secured to said chopper cylinder and having an unobstructed passage therethrough of a length materially in excess of its width, said passage being of such proportions as to length and diameter as to prevent the adult operator extending his fingers into contact with the worm, said passage being of restricted substantially cylindrical form at its upper end and the lower portion of said passage flaring downwardly to the chopper cylinder to facilitate the feeding of the food to the chopper cylinder."

"8. A meat grinder of the character described comprising a chopper cylinder, adapted to receive a worm therein, a hopper-receiving flange permanently secured to said chopper cylinder and having a passage therethrough, said passage being of a length approximating twice the width thereof and being of such proportions as to length and diameter as to prevent the adult operator extending his fingers into contact with the worm, said passage being of restricted substantially cylindrical form at its upper end and flaring gradually downwards to the chopper cylinder to facilitate the feeding of the food to the chopper cylinder, and a pan-shaped feeding hopper having a cylindrical stem fitted within the cylindrical part of the flange, said stem extending into said flange to the point of flare and provided with a bore of more restricted cross-sectional area than the flange."

The patent in suit and the invention defined by the claims thereof relates to a meat grinder, which may be either motor-driven or manually operated.

The patent describes an alleged improvement on meat grinders of a type that was well-known and had been used many years prior to the application which resulted in the patent in suit. It is of the type which embodies a chopper cylinder, with which is associated a feed hopper

leading to the chopper cylinder. Within this cylinder is mounted a rotating worm which grips the meat and feeds it forward, extruding it through a perforated plate, to be cut up or ground by a rotating knife.

The principal object of the invention is to provide a meat grinder which is so constructed that the possibility of the operator's fingers getting within the reach of the worm is prevented and the danger of the fingers being injured or cut off during operation of the grinder is minimized.

At the outset, it should be noted that the patentee, at the time he filed his application for the patent, believed that it was entirely new with him to construct and dimension the various parts of a meat chopper so that accidents of the type above referred to would be prevented. During the prosecution of the application the patentee learned that this was not the case and that his invention, if he made any at all, consisted mainly in the particular relationship between the inner diameter of the inlet to his chopper cylinder and the length of said inlet. It is unfortunate that the practice in the Patent Office does not compel an inventor to acknowledge the prior art and to so amend his specification that a true picture of the invention can be obtained without first having to wade through the prior art and analyze the usual conflicting testimony of experts in the particular art. If the Patent Office rules would force an inventor, after he has ascertained the prior art, to amend his specification in view of the prior art, trials for infringement would be materially shortened and long drawn out arguments by attorneys, as well as lengthy dissertations by experts, would be avoided. Moreover, the general public would be in a better position to ascertain the character and limits of the invention and how it is to be distinguished from others which may be made or purchased in safety.

The invention disclosed is aptly set forth in the specification of the patent on page 1, lines 48 to 85, and I quote the description, in toto: "As shown in the drawing the chopper cylinder 10 is provided with a hopper receiving neck or flange 11, which extends upwardly a substantial distance from the body of the chopper cylinder and constitutes an inlet thereto. In actual practice this flange or inlet is so proportioned that the outer end of the passage through this receiving flange is about four inches from the nearest point on the worm. The upper part of this passage which is designated by the numeral 12 is substantially cylindrical in shape and is adapted to snugly receive the discharge spout 13 of the pan-shaped hopper 14. The meat to be ground is placed in this hopper 14 and forced downwardly through the discharge spout into the chopper cylinder by using the fingers, or any suitable tool. As stated the flange 11 extends preferably upwardly such a distance that its upper end is some four inches from the nearest point on the worm. In addition, when the hopper 14 is in place this distance is increased an inch or more. And with a distance of four or five inches to the nearest point of the worm it is practically impossible for the fingers of the operator to come in contact with the worm. But the opening through the conventional feed hopper is so large that the entire hand, in many machines can be passed through this opening. In order to prevent this, the passages through the discharge spout of the hopper and through the flange 11 are constricted so that it is impossible to extend the hand down therethrough. The minimum diameter of the passage through the discharge spout 13 is preferably about two to two and one-quarter inches."

It was found by the inventor that when the passage or neck 11 is designed as described, there is a tendency to retard the free feeding of the meat through said passage. In order to overcome this difficulty the lower part of the passage, which is designated in the drawings by the numeral 15, was flared downwardly.

The defenses relied on are:

1. Invalidity of the claims in view of the prior art;

2. Invalidity of the claims in view of prior uses; and

3. Non-infringement.

### 1. The Prior Art.

If the device described in the patent in suit had been an original invention, first devised to prevent the operator's fingers from reaching the worm in the chopper cylinder, it would have been a new and very useful contrivance to supply a need that had been recognized in the art as a serious one. But it was not. It followed in the wake of patented devices which were designed to meet this need, and the defendant contends that no inventive idea is shown by the Johnston patent and that

it is only an illustration of mechanical skill which one conversant with the subject matter, and in view of what had already been pointed out as a means for meeting the difficulty, might be expected to supply. It is contended by the defendant that Johnston discovered no new principle or mode of operation which is represented by the means he proposed, and that the means which he did use effected no new result, but that they are the equivalent of former constructions operating in the same way, more skillfully designed perhaps, but carrying forward an old idea in better form. This defense makes it necessary to find out what already had been discovered and known in the art when this patentee brought out his means for preventing the operator's fingers from reaching the worm in the chopper cylinder.

In 1916, the Enterprise Manufacturing Company of Pennsylvania obtained Swedish patent No. 40743 for a meat grinder. The specification says that "the object of the present invention is a meat grinder provided with an auxiliary funnel above the feed funnel proper or the main funnel and the purpose of the invention is to prevent the operator from becoming injured by catching the fingers between the screw (worm) and the casings when the material, for example, meat, is pressed into the grinder from the funnel." In this device an auxiliary funnel 11 is connected by means of a collar 13 with a plate 7, the latter being mounted upon the main funnel 3 of the chopper cylinder. The patent states that the collar 13 is "comparatively narrow and of such length that it is impossible for the operator to press the hand into the collar." It is also impossible for the fingers to penetrate into the main funnel 3. The auxiliary funnel may have any form desired, "as the opening in the collar and its length prevent the fingers of the operator from penetrating into the main funnel as far as to the screw" (worm).

In 1908, German patent No. 218,620 was granted to one Deiters, the sole purpose of which was to provide the filling hopper with such a long narrow inlet passage that it is impossible to reach the worm of the meat grinder with the hand. The inventor of this patent says: "In accordance with the present invention accidents are prevented by the feature that the filler hopper is provided with such a long and correspondingly narrow entry passage that it is impossible to reach the hand to the conveying or cutting members. This arrangement merely requires that the meat be cut into long and relatively thick strips."

A later German patent No. 295,377 was issued in 1916 to Alexanderwerk. In connection with the feature of safety, we find in this patent the following: "In mechanically driven meat grinders the requirements (obviously the requirements of the German Government) are that the filler hopper must be so constructed that it is impossible for the operator to reach the working parts of the machine, e. g. the worm." Even as early as 1916 it was recognized that the danger of injury to the fingers of the hand is obviated if the filler opening does not exceed a diameter of fifty millimeters and if it has a height of at least two hundred millimeters as stated in the description of the patent. In the Alexanderwerk device the filler passage has a free space of about fifty millimeters diameter inside of it, and the wall of the inlet passage which may be widened as desired, is provided with a spiral or helical rib. The pitch of the helix may be made so steep that the rib does not appreciably hinder the descent of the meat through the filler passage since the center portion of the latter is entirely free. The patent goes on to say that the operator is thus "absolutely prevented from reaching the hand into the machine."

The new thing which Johnston claims to have invented in his meat grinder is that he permanently secured the inlet to his chopper cylinder, and that the length of the said inlet passage approximates twice the width thereof and being of such proportions as to length and diameter as to prevent the adult operator extending his fingers into contact with the worm. Therefore, the question is whether he made any advancement beyond the former art which partakes of the quality of invention? And if he did, in what did it consist? Meat choppers having inlets designed and constructed to prevent an operator extending his fingers into contact with the worm had, as we have seen, already been provided. There was nothing new in this general idea. The principles and method of construction had been illustrated and were well-known. If he could develop some new principle, or some new means having the qualities of originality and utility, he might, if the sources of his new light were obscure and required more than the skill of those engaged in the practice of the art to discover or recognize, be entitled to a

patent. But, if he was in the beaten path and saw only how the means already known and practiced could be improved in detail, such as changing the form, extending the size, carrying the same thought into another·part of the same structure with no change in the character of its function there, or in any' like case which did not display something extraordinary—something beyond the sphere of the common intelligence of those conversant with the art—such exercise of ordinary skill cannot be deemed invention.

Referring to his claims, it would seem as if Johnston considered himself the originator of the idea of providing an inlet to a chopper cylinder having a passage therethrough opening into said cylinder of a·length materially in excess of its width, said passage being of such cross-sectional area at a point relatively distant from the worm as to prevent the adult operator extending his fingers into contact with the worm. But we have seen how far this was from the fact. It had for a number·of years been embodied in various forms. He simply changed the proportions between the length of the passage and its inner diameter.

Assuming that the devices disclosed in the three patents relied on by the defendant have some defects, it is obvious that a ,mere difference or change in the mechanical construction in size or form of the thing used, in order. to obviate known defects. existing in the previous devices, although those changes are highly advantageous, and far better and more efficacious and convenient, does not make the improved device patentable. In order to be patentable, it must embody some new idea or principle not before known. It must be a discovery, as distinguished from mere mechanical skill or knowledge. Atlantic Works v. Brady, 107 U.S. 192, 2. S.Ct. 225, 27 L.Ed. 438; Hollister v. Benedict & B. Mfg. Co., 113 U.S. 59, 5 S.Ct. 717, 28 L.Ed. 901; Thompson v. Boisselier, 114 U.S. 1, 2, 5 S.Ct. 1042, 29 L.Ed. 76; Busell Trimmer Co. v. Stevens, 137 U.S. 423, 11 S.Ct. 150, 34 L.Ed. 719.

In view of the foregoing, I find that the improvement described in the patent in suit was within the mental range of any one skilled in the art to which the patent relates, and did not require invention to devise it but only the use of ordinary judgment and mechanical skill. It involves merely the skill of a workman and not the genius of an inventor. Hence, I hold that all the claims of the patent in suit are invalid.

In so deciding, I am not unmindful of the fact that the Swedish patent No. 40743 and German patent No. 295,377 were before the Patent Office during the prosecution of the application which resulted in the patent in suit, nor have I overlooked the fact that certain claims of the said application were before the Supreme Court of the District of Columbia in proceedings under Section 4915, Rev.St., 35 U.S.C.A. § 63. However, the Court did not have before it any one of the patents relied upon by the defendant. It is obvious that, although the presumption arises in favor of the validity of a patent by reason of its issuance, it is only a prima facie presumption and capable of being overcome by clear evidence of anticipation. In the case at bar the decision of the Supreme Court of the District of Columbia must be disregarded since that Court did not have before it the prior art, and it does not appear that the Examiner in the Patent Office appreciated the pertinence of the two prior art patents.

### 2. Prior Uses.

In view of my conclusion that the Johnston patent is invalid in view of the prior art, it is not necessary to analyze the testimony produced on behalf of the defendant in its effort to prove that Johnston was anticipated by the prior knowledge and use on the part of Enterprise Manufacturing Company of Pennsylvania and by the defendant itself. However, I will summarize my views with respect thereto.

It appears from the testimony adduced that in 1914 the Enterprise Manufacturing Company of Pennsylvania placed on the market its LN–22 and LN–32 Choppers (Defendant's. Exhibits 18 and 19). These exhibits differ only as to the size of the chopper cylinder and worm; the long neck in each instance having the same dimensions. In the same year, the said company advertised in its catalogue (Plaintiff's Washington Exhibit 30) page 25, that these choppers were "designed in response to requests for a machine wherein the operator's fingers cannot come in contact with the feed screw." These choppers were both hand and power driven. It appears that the construction of these choppers was substantially identical with those of the

Johnston device, and that these devices clearly anticipate the broad claims in issue herein.

It is entirely immaterial how many of the choppers of the Enterprise Manufacturing Company of Pennsylvania were sold and used prior to the alleged date of invention by Johnston. It is sufficient, and it is proven, that some of the same were sold and that the invention was known by the public prior to Johnston.

As to the prior use by Landers, Frary & Clark, it seems to be admitted by plaintiff that in 1914 the defendant was placing a line of choppers on the market having "high hoppers", but plaintiff argues that there is no anticipation because the documentary exhibits of the defendant Company do not refer to them as safety choppers, and the witnesses do not define them as such. I am satisfied that the choppers were made for shipment to countries which would not accept choppers where an operator was likely to be injured, and that the purpose of such choppers was for "safety" (R. p. 290). Defendant's Exhibits 46 and 47 are, to my mind, a complete anticipation of the claims of the Johnston patent.

### 3. Infringement.

Having found the patent to Johnston to be invalid, it becomes unnecessary to determine whether the defendant's chopper has infringed it. However, since the question of infringement, as I view it, turns upon a narrow and relatively simple question, namely, the "critical dimensions" of the Johnston patent, I deem it appropriate at this time to pass upon this question.

Defendant's pan (Plaintiff's Exhibit Q) has a diameter through the inlet of 2.5 inches, which is one quarter of an inch in excess of the diameter stated by Johnston. This difference produces a cross-sectional area over 23% greater than that of the patent. I find that this increased area is a mere variation in degree and, in order to compensate for it, the defendant has increased the finger length, correspondingly, to approximately 4¾ inches so as to maintain the feature of co-ordinated dimensions and maintain the same high degree of finger protection.

I thus conclude that, were it necessary to rest the present case upon the question of infringement, I should be compelled to find that plaintiff had sustained the burden imposed upon it by proving that infringement had occurred.

In conclusion, I find that the claims of the patent in suit are invalid for anticipation and, therefore, the bill of complaint must be dismissed.

It is believed that the findings of fact and conclusions of law as above stated are sufficient to comply with rule 52 of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, and an order so providing must be embodied in the decree which will be submitted for signature, properly consented to as to form.