YAWMAN AND ERBE MANUFACTUR-
ING COMPANY, a New York Corpo-
ration, Plaintiff-Appellee,

v.

COLE STEEL EQUIPMENT COMPANY,
Inc., a New York Corporation,
Defendant-Appellant.

No. 128, Docket 25702.

United States Court of Appeals
Second Circuit.

Argued Jan. 8, 1960.

Decided April 22, 1960.

S. L. Wheeler, Milwaukee, Wis. (Benjamin T. Rauber, New York City, Joseph P. House, Jr., Milwaukee, Wis., on the brief), for plaintiff-appellee.

Joseph Hirschmann, New York City, for defendant-appellant.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

Yawman and Erbe Manufacturing Company (plaintiff-appellee) brought this action for infringement by Cole Steel Equipment Company, Inc. (defendant-appellant) of Letters Patent 2,263,-204 (referred to as "the patent") issued to plaintiff. From an interlocutory judgment and decree in plaintiff's favor declaring the patent valid in law and infringed by defendant, dismissing the defense of laches on the merits and referring the computation of damages between September 8, 1949 and November 18, 1958 to a Special Master, defendant appeals.

Certain dates are significant.

On July 1, 1939, James R. Clark, plaintiff's chief engineer and assignor of the patent to plaintiff, filed his application. The patent was issued on November 18, 1941.

Seven years later, on November 12, 1948, an attorney for plaintiff wrote defendant that an advertisement indicated that defendant was offering for sale a desk which infringed its patent. Correspondence between the attorneys for the parties continued at infrequent intervals through 1950. There was then a four-year hiatus.

On July 12, 1954 plaintiff's attorney wrote concerning "resume infringement" which evoked a reply disclaiming infringement of "any valid claim of the Clark patent" and asserting that the claims were invalid. The dispute by correspondence continued through 1954 and 1955 when suit was finally commenced on September 8, 1955. Defendant's answer was filed on December 20, 1955 but the note of issue for trial was not filed until June 19, 1957. The trial took place in October 1958. On November 18, 1958 and before decision the patent expired.

On this appeal defendant (appellant) contests the trial court's determination of the three issues, validity, infringement and laches.

The patent in question purported to cover an invention and improvements in the method of furniture top construction. In essence the claims to invention embrace the placement of "corner caps" and "binding strips" around the curved margins of the top surface of desks, tables, and other similar articles of furniture. These caps and strips serve the mechanical function of better securing a protective linoleum top surface to the downwardly curving outer edges of a desk or table frame. In addition a decorative and more finished effect is obtained.

To the unfinished top surface or top plate is cemented a layer of flexible linoleum co-extensive with the top plate. In order to permit the rounding off of the outer edges along the perimeter of the top surface, the margins of the top plate are curved downwards and the four corners are cut away. The corners are cut away to prevent the bunching or wrinkling of the linoleum as it is curved down at the corners.

Although the linoleum is cemented to the top plate, it would have a tendency to pull away and loosen, particularly along the margins where it is curved downwards following the contour of the top plate. The binding strip, a continuous strip of extruded aluminum, overlaps and engages the edges of the linoleum and holds it firmly to the top plate. The corner caps cover the four top corners of the desk where the top plate and linoleum have been cut away.

The use of binding strips or moldings in connection with furniture top construction has long antedated the Clark patent; similarly corner caps in one form or another have a place in the history of the art prior to 1941.

Plaintiff's claim to invention, to the extent that it relates to the alleged infringement, primarily rests upon the method by which the binding strip is affixed to the frame and the enclosure of

the corner caps by one continuous binding strip.

### A. *Affixation to the frame*

The lower part of the binding strip has a horizontal metal web or tongue which runs the length of the binding strip. This web is forced into a tight horizontal recess or narrow opening between two pieces of metal which are part of the desk or table frame. The friction created by the snugness of the fit causes the binding strip to be held tightly to the frame. This method of frictional engagement of the binding strip to the frame does not appear to have been used in any of the prior patents in this area. If there be patentable novelty it must be found in this idea.

Some of the representative prior patents set up by the defendant as anticipatory of the Clark patent are: Brainard No. 1,649,805 (1927), Soper No. 1,815,-167 (1931), Hunter No. 1,822,032 (1931), Wege No. 1,969,489 (1934), and Hunter No. 2,032,878 (1936). In the Brainard patent, the binding strip was welded to the frame; the Soper binding strip was affixed to the frame by a clamping strip; and in the Hunter patents the binding strips were either welded or bolted to the frames. Although the Wege patent teaches the method of inserting the binding strip into a groove, it is not held there by friction but rather by indentations punched into and through the flanges.

■ It may be assumed that the prior patents did not anticipate the frictional engagement used in the Clark patent but this fact is not determinative unless this element satisfied the test of the statute (35 U.S.C.A. § 103). Reduced to its simplest terms "frictional engagement" here is merely the holding together of two objects by means of forcing a pro-

jection on one object into a constricted opening on the other. Although this idea may not be quite so generic as the "wheel" nevertheless it is a common principle of mechanics known to every craftsman. It is not an invention sufficient to meet the patentable standards as defined by the Act [1] or illustrated by the decisions.[2]

### B. *Enclosure of the corner caps with one continuous strip*

The Clark binding strip is made in one continuous piece and wraps around the four corner caps. In some of the prior patents the binding strips were made in four sections, the ends of each section abutting or dovetailing with the corner caps. However, in Soper No. 1,815,167, Hunter No. 2,032,878 and Burrowes No. 1,235,432 (1917), one continuous strip was used, although in Burrowes it was merely an alternative feature. Thus all that the Clark patent does is to use the continuous strip in conjunction with the corner caps well known to the prior art.

Further claims of the Clark patent are that the corner caps are grooved and the webbing of the binding strip is cut away at the point where it curves around the corner caps. The purpose of the groove and the cut-away webbing is to allow for the binding strip to lie flush against the corner cap and possibly furnish additional support for the corner caps.

These additional features of the Clark patent, however, would be obvious to anyone skilled in the art who attempted to use a wrap-around binding strip in combination with the corner caps. Any protrusion, such as the webbing in the binding strip, would have to be cut away and, in order to allow the strip to lie flush with the corner caps, some accommodation would have to be made in the cap for the binding strip.

---

1. "A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to

which said subject matter pertains * * *" 35 U.S.C.A. § 103.

2. See, for example, Schaefer, Inc. v. Mohawk Cabinet Co., Inc., 2 Cir., 276 F.2d 204; Deering, Milliken & Co. v. Temp-Resisto Corp., 2 Cir., 1960, 274 F.2d 626, at pages 633–634, and cases cited therein.

The claims to invention viewed in their most favorable light do not achieve the necessary standard of invention set by the law (35 U.S.C.A. § 103) and the interpretative decisions. The elements in the patent in issue are not patentable advances over the prior art as to warrant the grant of a patent monopoly.

The decision that Patent No. 2,263,204 is invalid for lack of invention makes it unnecessary to pass on the questions of infringement and laches.

Because the patent in suit is found to be invalid for lack of invention, the judgment is reversed.