**A. Shepard TITCOMB, Plaintiff-Appellant,**

v.

**NORTON COMPANY, Defendant-Appellee.**

**No. 323, Docket 26298.**

United States Court of Appeals Second Circuit.

Argued April 12, 1962.

Decided July 11, 1962.

---

5. 26 U.S.C. § 7302.

**254**

Emery, Whittemore, Sandoe & Graham, New York City, Nichol M. Sandoe and Hugo M. Wikstrom, New York City, of counsel, for appellant.

Curtis, Morris & Safford, New York City, Daniel L. Morris, Edward G. Curtis and John A. Mitchell, New York City, of counsel, for appellee.

Before LUMBARD, Chief Judge, and SWAN and KAUFMAN, Circuit Judges.

SWAN, Circuit Judge.

Plaintiff, a citizen of Connecticut, sued Norton Company, a Massachusetts corporation, for patent infringement, unfair competition and breach of contract. After trial before Judge Smith without a jury the action was dismissed on the merits.[1] The appeal involves claims for infringement of two patents, and the denial of plaintiff's motion for a new trial.

The patents in suit are United States Patent 2,476,334, issued to Titcomb on July 19, 1949, and Re. 23,717, which he obtained on September 29, 1953, as the third reissue of original Patent No. 2,-501,422, dated March 21, 1950. Patent 2,476,334 relates to a grinding wheel composed of removable abrasive segments and a supporting chuck therefor;[2] Re. 23,717 relates to the abrasive segments to be used on the wheel. The claims in suit are claims 4 and 17 of the wheel patent and claims 6 and 7 of the reissue patent.

Claim 4 is a method claim. It is described in appellant's brief as "covering the method of forming grinding wheels of different diameters from a single segment." The brief asserts that "The two aspects, a single, novel segment form and the manner of mounting the segment, not only provided a better cutting wheel but allowed construction of a range of wheel sizes from a single segment." Claim 17 is an apparatus claim described by appellant as "covering an

---

1. The claims for unfair competition and breach of contract were abandoned on the appeal and require no further mention.

2. Claims for the chuck *per se* are not in suit; defendant is not charged with having infringed them.

abrasive wheel made up of a plurality of segments of novel shape arranged in circular echelon, i. e. disposed at an angle to the direction of travel." The segment described in the claims of the reissue patent which are in suit is more or less of a crescent shape; according to the appellant's brief, it is so designed that when mounted as described in the wheel patent it "deflects most of the debris before it goes under the grinding surface, keeping the segment clean and efficient." Since we accept appellant's description of the claims in suit, it seems unnecessary to set forth the claims verbatim. Their exact terms may be found in Judge Smith's opinion published at 124 U.S.P.Q. 257, 208 F.Supp. 9.

The trial court made formal findings of fact and his opinion contains additional findings of fact, which are treated as such by both parties. The trial lasted sixteen days. Judge Smith heard and saw witnesses, thirteen in number including Mr. Titcomb, received approximately two hundred exhibits, and had the benefit of observing moving pictures and actual demonstrations of the operation of the patented wheel and segment. His opinion reviews the prior patents, publications and uses. Relying on 35 U.S.C. § 103 he held all the claims in suit invalid for lack of invention.[3] After a careful review of the record, we hold that the court was correct in concluding that the claims in suit are invalid.

Appellant's argument in support of the validity of the claims is grounded on 35 U.S.C.A. § 282 which provides in part that "A patent shall be presumed valid" and "The burden of establishing invalidity of a patent shall rest on a party as-

serting it."[4] We believe defendant sustained the burden.

The advantages asserted by Titcomb for his alleged inventions were (1) "standardization," i. e., making possible the use of a single size and shape of segments in the construction of grinding wheels of various diameters; (2) the plowing action resulting from the shape and positioning of the segments, which facilitated the throw-off of "swarf" (debris), and increased grinding efficiency. The trial court agreed that these advantages were present in some degree, but found that standardization was old in the art; that it had long been recognized that debris could be directed by the shape and positioning of segments; and that there was no significant difference in segment shape from the earlier art. Although the opinion states that none of the patents cited "use the same construction toward the same end as Titcomb," Judge Smith concluded that "Titcomb's contributions do not rise to the level of invention, but partake more of the nature of improvements likely to occur to a mechanic skilled in the art putting forth his efforts toward the ends sought."

■■ We are not convinced that any of the findings of fact are "clearly erroneous." Consequently they must stand. Rule 52(a) F.R.Civ.P., 28 U.S.C.A.; see Graver Mfg. Co. v. Linde Co., 336 U.S. 271, 274, 69 S.Ct. 535, 93 L.Ed. 672. But the legal conclusion that Titcomb's contributions to the art do not involve invention is fully reviewable by this court.[5] What constitutes invention is a difficult concept to apply. It is "particularly elusive where applied to a combination of

3. 35 U.S.C. § 103 provides: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in

which the invention was made. July 19, 1952, c. 950, § 1, 66 Stat. 798."

4. The section also provides that "Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability" shall be a defense.

5. See Hygienic Specialities Co. v. H. G. Salzman, Inc., 2 Cir., 302 F.2d 614 (April 2, 1962).

known elements," and "is never susceptible of mechanical application." See Zoomar, Inc. v. Paillard Products, 2 Cir., 258 F.2d 527, 529. We agree, however, with Judge Smith's application of the statutory test, and his analysis of the prior art as it relates to Titcomb's patents.

■ It is contended that Titcomb solved problems that had long existed in the industry and, since there was no precise anticipation of the patents, this should outweigh the conclusion that no invention was involved. As already stated, however, the court found that the supposed problem of standardization did not really exist. "Nor," it found, "was the improvement in disposal of swarf demonstrated to be a goal extensively sought after by the industry over an extended period." Nor was there convincing evidence that the industry promptly adopted Titcomb's inventions. It is true that finding 35 states that "Plaintiff and his licensees have made and sold to date some 600 chucks of the AA–1 design to some 450 grinder users," and Mr. Titcomb testified that from 1949 to 1959 the sales by his licensees of his patented segments amounted to a million and a half dollars. He argues that his commercial success should outweigh the court's conclusion that the inventions were obvious. However, the commercial success evidenced by the sale of six hundred chucks (defendant is not charged with infringing the chuck claims) does not demonstrate that their commercial success is attributable to patented claims for the wheel and segment form.[6] The claim of commercial success of the inventions involved in this suit is weakened by the uncontradicted testimony that during the first six months of 1958, the volume of sales by Norton Company, the largest abrasive manufacturer in the country (Finding No. 2), of segments for Titcomb chucks was less than one percent of its sales of other shapes of segments for other chucks used in the industry, approximately $3,000 as compared with $450,000. Where validity of a patent is doubtful commercial success may tip the scale in favor of validity, Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721, but it is no substitute for invention. In this case the evidence of commercial success attributable to the claims in suit would be insufficient to do so even if we were to find the question of validity sufficiently close to make commercial success relevant to its determination.[7]

Since we hold the patents invalid for lack of invention it is unnecessary to discuss other issues argued by the parties.

■■ There remains for discussion Titcomb's appeal from the order denying his motion for a new trial on the ground of newly discovered evidence. The motion was denied in an unreported memorandum opinion. The new evidence was the discovery that when Titcomb chucks were used in high power machines extraordinary increase in grinding speeds was obtained.[8] Concededly plaintiff could have obtained this evidence before the trial closed had it made inquiry from its licensees. Denial of the motion was rested on lack of diligence. We affirm the denial on the memorandum opinion below.

6. See Zoomar, Inc. v. Paillard Products, 2 Cir., 258 F.2d 527, 530: "And plaintiff's proof does not clearly show what portion of its considerable commercial success is attributable to its later improvement patent * * *"

7. Cf. Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, 535, where the new advance "supplanted the existing practice and occupied substantially the whole field," cert. den. 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799.

8. See Buffalo-Springfield Roll. Co. v. Galion Iron Works Mfg. Co., 6 Cir., 215 F.2d 686, 688: "It is settled law beyond the need of citation that the adaptation of a machine for a new use does not entitle one to a patent if the idea of the new use is suggested by analogous art and invention may not be perceived in the adaptation."