**Jerome GROSS, Plaintiff-Appellee,**

v.

**JFD MANUFACTURING CO., Inc.,
Defendant-Appellant.**

**No. 223, Docket 27861.**

United States Court of Appeals
Second Circuit.

Argued Jan. 23, 1963.

Decided March 1, 1963.

See also 31 F.R.D. 256.

Donald H. Shaw, New York City (S. Stephen Baker, New York City, on the brief), for defendant-appellant.

John M. Calimafde, New York City (Roy C. Hopgood, Paul H. Blaustein, Hopgood & Calimafde, New York City, of counsel), for plaintiff-appellee.

Before FRIENDLY, KAUFMAN and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

JFD Manufacturing Co., Inc., defendant below, appeals from an order of the United States District Court for the Eastern District of New York, John F. Dooling, J., adjudging plaintiff's patent valid and infringed. Plaintiff, Jerome Gross, sought relief for alleged infringement of his patent No. 2,688,655, issued September 7, 1954, on a stand-off

insulator for television antenna lead-ins and similar high frequency conductors. Jurisdiction was asserted under 28 U.S.C.A. §§ 1338 and 1400. After trial without a jury, Judge Dooling issued an order accompanied by findings of facts, conclusions of law, and a memorandum opinion. His decision in favor of the validity of the patent was based on the presumption of validity of patents and on "rejection of the contention that 'obviousness' is self-evident."[1]

Stand-off insulators are so named because they are used to hold a television or radio cable away from the side of a building or structure. Prior to 1953 the conventional stand-off insulator for lead-in lines from a television antenna down the side of the supporting building to the receiver was a long-shanked wire eye-bolt with a straight shank end threaded and the eye-end not quite closed on the shank. In the eye-end, a disc-like insert made of a low-loss dielectric such as polyethylene was snugly fitted within the encircling wire eye. The insert was radially slotted to receive television transmission lines and could be rotated in the eye so that its radial slot could be turned to the gap between the shank of the eye-bolt and the end of the eye wire. These insulators could then be installed in a wall or mast and the transmission line slipped into the eye and insert slot without threading the whole line through the insulator from end to end.

The introduction of Ultra High Frequency television in 1952 and 1953 brought about study of the problems involved in receiving UHF signals, including the problem of the interference caused by the complete encircling of the lead-in cable by the metal eye. The Gross insulator solved this problem by having the wire bent at a right angle and

tightly affixed around the base of a rectangular holder instead of encircling a round one. By using a transverse, rather than peripheral, connection the insulator avoided interference with UHF transmission and reduced or eliminated standing waves, impedence mismatch, and capacitance signal loss. The patent was obtained on September 7, 1954. By letter of October 21, 1954, plaintiff notified defendant of its patent and alleged infringement by the defendant. Six years later this case was filed.

■ Judge Dooling's findings of fact are not seriously challenged. Rather, defendant JFD argues against the legal conclusions as to patentability. It is our duty to review the order upholding the validity of the patent. Titcomb v. Norton Co., 307 F.2d 253, 255 (2 Cir., 1962). We have done so, find the patent invalid, and reverse.

In order to prevail Gross had to bring its insulator within the provisions of Sections 101 and 103 of Title 35 of the United States Code:

"§ 101.

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

"§ 103.

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the inven-

1. "The finding of validity here is rested on the presumption and on rejection of the contention that 'obviousness' is self-evident. Obviousness has not been shown as a fact; indeed, other solutions preexisted or accompanied plaintiff's (Odegaard and Marth) and were different and, in the judgment of the trade, inferior. Obviousness in a legal sense, that is, judicially noticeable obviousness, subjectively arrived at, is not present: there is here only that patina of obviousness that correct solutions always have, no less in mechanics than in mathematics, and that arises from the subjective tendency to treat what is comprehended as being obvious."

tion was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made." [2]

We recognize that there is a presumption, which is rebuttable, in favor of the Gross patent and that the burden of establishing the invalidity of the patent is on JFD. 35 U.S.C.A. § 282; Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983 (1937). The balance was recently struck by this court in Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105 (2 Cir., 1962):

"Appellant places great weight on the presumption of validity attached by statute to a duly issued patent (35 U.S.C. § 282 (1958)). The presumption of validity relieves the patent holder of the burden of establishing that validity as a requisite for the successful maintenance of an infringement action, and places the burden of establishing invalidity on the alleged infringer who asserts it. International Carrier-Call & Television Corp. v. Radio Corp. of America, 142 F.2d 493, 495 (2d Cir. 1944); Western States Mach. Co. v. S. S. Hepworth Co., 147 F.2d 345, 348 (2d Cir.), cert. denied, 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991 (1945). More than that, the most that can be said of the presumption is that it requires that reasonable doubt on the question of validity be resolved in favor of the patent holder. See Mumm v. Decker & Sons,

301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983 (1937). The statute does not require that the presumption be accorded the weight of actual evidence or that the use of the presumption should affect a decision of invalidity that would otherwise be reached with confidence. This court has recognized the unavoidable obstacles to an accurate and impartial decision that are inherent in *ex parte* proceedings in the patent office, Guide v. Desperak, 249 F.2d 145, 148 (2d Cir. 1957). We cannot properly allow decisions of that office to alter the preponderance of the evidence on the question of validity. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 156, 71 S.Ct. 127, 95 L.Ed. 162 (1950); In re Thomson, 26 App.D.C. 419, 425 (1906); cf. Lyon v. Boh, 1 F.2d 48 (S.D.N.Y. 1924) (L. Hand, J.), rev'd, 10 F.2d 30 (2d Cir. 1926)."

Gross insists that we cannot reverse without holding the District Judge's findings of fact to be "clearly erroneous." This is not true. Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950).[3] The question of the validity of a patent is a question of law. Mahn v. Harwood, 112 U.S. 354, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed. 665 (1884); Gillman v. Stern, 114 F.2d 28 (2 Cir., 1940), cert. denied, 311 U.S. 718, 61 S.Ct. 441, 85 L.Ed. 468 (1941).

The order of the District Court was erroneous because the legal stand-

2. See "The Standard of Patentability—Judicial Interpretation of Section 103 of the Patent Act," 63 Colum.L.Rev. 306 (1963).

3. "It is urged, however, that concurrence of two courts below, in holding the patent claims valid, concludes this Court. A recent restatement of the 'two-court rule' reads, 'A court of law, such as this Court is, rather than a court for correction of errors in fact finding, cannot undertake to review concurrent findings of fact by two courts below in the absence of a

very obvious and exceptional showing of error.' Graver Tank [& Mfg.] Co. v. Linde Air Products Co., 336 U.S. 271, 275, [69 S.Ct. 535, 93 L.Ed. 672, 677.] The questions of general importance considered here are not contingent upon resolving conflicting testimony, for the facts are little in dispute. We set aside no finding of fact as to invention, for none has been made except as to the extension of the counter, which cannot stand as a matter of law. * * *" 340 U.S. at 153–154, 71 S.Ct. at 131.

ards for determining whether a patent is valid were not properly applied. The terms of the statute draw a clear line between devices which are true discoveries and devices which would "have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C.A. § 103. If an improvement is to obtain the privileged position of patent protection, more ingenuity must be exercised in its creation than merely that which is possessed by an ordinary mechanic acquainted with the business and skilled in the art. Lyon v. Bausch & Lomb Optical Co., 224 F.2d 530 (2 Cir.), cert. denied, 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799 (1955). As was said in Hobart Mfg. Co. v. Landers, Frary & Clark, 26 F.Supp. 198, 202 (D. Conn.), affirmed per curiam, 107 F.2d 1016 (2 Cir., 1939):

"Assuming that the devices disclosed in the three patents relied on by the defendant have some defects, it is obvious that a mere difference or change in the mechanical construction in size or form of the thing used, in order to obviate known defects existing in the previous devices, although those changes are highly advantageous, and far better and more efficacious and convenient, does not make the improved device patentable. In order to be patentable, it must embody some new idea or principle not before known. It must be a discovery, as distinguished from mere mechanical skill or knowledge."

The District Judge found that the Gross insulator had electrical and mechanical advantages not combined in the prior art. However, a careful examination of the entire record and exhibits, including the several types of lead-in insulators, convinces us that these advantages resulted from the use of a mechanical skill which cannot be deemed to reach the level of invention. In order to avoid encirclement of the lead-in cable, the insulating disc could most obviously either be grasped transversally by the wire or the wire could be inserted in the bottom of the disc. Gross chose the first method. In addition, the Gross insulator re-shaped the disc from circular to rectangular and split it in the middle so that the cable could be clasped rather than inserted. Similar use of bare mechanical skill has been held not to meet the traditional standards governing the validity of patents. In E. J. Brooks Co. v. Stoffel Seals Corp., 266 F.2d 841, 843 (2 Cir.), cert. denied, 361 U.S. 883, 80 S.Ct. 154, 4 L.Ed.2d 119 (1959), this court stated:

"It concededly differs from tags long used on poultry only in its mode of affixture. This change hardly reaches that level of invention required by statute and the Constitution for the grant of a patent monopoly. 35 U.S.C. § 103; U.S.Const. Art. 1, § 8. Affixture by clamping is as common as the ordinary clothespin used to hold clothes on a line. And the bent metal tongue which develops the tag's clamping pressure is a simple toggle not unlike toggles used to develop a controlled pressure in devices as diverse as stone crushers, wagon brakes, and shoe trees. Such an adaptation of a device common to many dissimilar fields, achieving no unusual results and solving no problems of recognized difficulty, is clearly not invention. Welsh Mfg. Co. v. Sunware Products Co., 2 Cir., 236 F.2d 225, 226.

"The device is, in short, a simple and obvious gadget of the type held unpatentable in Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, or Savoy Leather Mfg. Corp. v. Standard Brief Case Co., 2 Cir., 261 F.2d 136, or Surgitube Products Corp. v. Scholl Mfg. Co., 2 Cir., 262 F.2d 824; and it is clearly more obvious than the widely used and highly successful Zoomar lens held not novel in Zoomar, Inc. v. Paillard Products, 2 Cir., 258 F.

2d 527, certiorari denied 358 U.S. 908, 79 S.Ct. 237, 3 L.Ed.2d 230."

See also Yawman & Erbe Mfg. Co. v. Cole Steel Equip. Co., 277 F.2d 876 (2 Cir., 1960); Schreyer v. Casco Prods. Corp., 190 F.2d 921 (2 Cir., 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952).

In Wintermute v. Hermetic Seal Corp., 279 F.2d 60, 62 (3 Cir., 1960), the rule was restated:

"We do not mean that the plaintiff has not produced a useful article, and we have carefully sought to avoid confusing simplicity with hindsight. But it is not enough that the claimed discovery is useful, or even that it is an improvement. It must show an inventive advance, and must differ from elements previously known in such a way that the subject would not have been obvious to one skilled in the art. Given the particular problem and the need for its solution, a skilled mechanic could draw upon his knowledge of the art to create the housing here involved, or one substantially like it, without the exercise of inventive faculty."

See also Robins Indus. Corp. v. David Riemer Co., 312 F.2d 889 (2 Cir., 1963).

 Gross also argues that his product was a great commercial success, and the District Court indeed found that a company owned by Gross had received orders for 4,000,000 of the patented insulators, and that its failure to deliver more than a few hundred thousand was due to inability to obtain the wire components. We need not determine whether this history, culminating in the bankruptcy of the company, would constitute commercial success. For commercial success is neither a substitute for invention nor sufficient evidence of it where lack of invention is so plain as here. Titcomb v. Norton Co., 307 F.2d 253, 256 (2 Cir., 1962). See Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721 (1944).

We conclude that the Gross patent fails to meet the recognized statutory standards for invention, that the patent is invalid, and that the order of the District Court must therefore be reversed.