**John LAKA, d/b/a Laka Tool & Stamping Company, and Laka Tool & Stamping Company, Inc., Plaintiffs,**

v.

**COLUMBIA PEN & PENCIL COMPANY, Inc., and Bertram A. Strauss, Defendants.**

Civ. A. No. 20267.

United States District Court
E. D. New York.

April 23, 1963.

Hopgood & Calimafde, New York City, for plaintiffs; John M. Calimafde, New York City, of counsel.

Holman & Holman, Mineola, N. Y., for defendants; Bader & Bader, Elmont, of counsel.

MISHLER, District Judge.

The complaint states two claims. The first claim is for infringement of patent No. 2,907,302 relating to an improvement in retractable writing instruments. The pretrial order, dated May 24, 1962, determined (with the consent of the parties) that the second claim presented no issues of fact for the Court.

The answer denies the material allegations of the claim. In addition, the answer affirmatively claims that the patent is invalid (1) because it is anticipated by the prior art, and (2) because the patent was issued to one Larry Raszl, who was not the inventor, and, further, that the actual inventor was the individual defendant, Bertram A. Strauss. These claims are stated in a variety of ways in the form of additional affirmative defenses.

The petition for letters patent, containing 14 claims, was executed by Larry Raszl on March 20, 1957. All the claims were rejected by the Patent Office Exam-

iner.[1] Thereafter, and on April 16, 1957, the right to letters patent was assigned to plaintiff, Laka Tool and Stamping Company, which assignment was recorded April 2, 1957.

The application was amended and claims 1 to 4 and 6 were cancelled. The examiner again rejected the claims by communication mailed June 3, 1958.[2] The application was again amended by letter dated November 25, 1958 by cancelling the balance of the original claims, i. e., claims 5 and 7 to 14, and substituting therefor claims numbered 15, 16 and 17. The application as thus amended was again rejected by the Examiner by communication dated February 11, 1959. On application to the Board of Appeals of the United States Patent Office, the three claims were allowed. Patent No. 2,907,-302 was issued to plaintiff, Laka Tool and Stamping Company, on October 6, 1959. The prior art cited was Hoffman, Krell Liquori Sams (U.S. Patents) and Lamy, Kimberly Corp., Universal Co. and Scripto, Inc. (Foreign).

### The Presumption of Validity

■ The patent is presumed valid and the burden of establishing invalidity is on the defendants. Mumm v. Jacob E. Decker & Sons, 1937, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983.

■ The presumption flows from the expertness and experience of the personnel of the Patent Office. Georgia Pacific Corporation v. United States Plywood Corporation, 1958, 2 Cir., 258 F.2d 124, 133, cert. denied, 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112. Where the file wrapper discloses full and careful consideration, the presumption of validity is entitled to particular weight. Is the presumption here stronger because the patent was reviewed and approved by the Board of Appeals, or weaker because it was reviewed and rejected three times by the Patent Office Examiner? Both considerations bear on the strength of the presumption. The presumption is further affected and its strength diluted by the failure of the patent to cite prior art cited by defendants.[3] Zoomar Inc. v. Paillard Products, Inc., 1958, 2 Cir., 258 F.2d 527, 530; cert. denied, 358 U.S. 908, 79 S.Ct. 237, 3 L.Ed.2d 230. Lorenz v. F. W. Woolworth Co., 1962, 2 Cir., 305 F.2d 102, marginal note 7 at p. 105. The effect of the presumption of validity has been stated by the Court in Lorenz v. F. W. Woolworth Co., supra, 305 F.2d at p. 105, as follows:

" * * * the most that can be said of the presumption is that it requires that reasonable doubt on the question of validity be resolved in favor of the patent holder. See Mumm v. [Jacob E.] Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983 (1937). The statute does not require that the presumption be accorded the weight of actual evidence or that the use of the presumption should affect a decision of invalidity that would otherwise be reached with confidence. This court has recognized the unavoidable obstacles to an accurate and impartial decision that are inherent in ex parte proceedings in the patent office, Guide v. Desperak, 249 F.2d 145, 148 (2d Cir. 1957). We cannot properly allow decisions of that office to alter the preponderance of the evidence on the question of validity. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,

---

1. The Examiner cited the following patents:
   Liguori 2,715,888 July 23, 1955
   Lamy (Germany) 809,514 July 30, 1951
   Kimberly Corp. (Australia) 167,283 March 20, 1950
   Scripto, Inc. (France) 1,122,125 May 14, 1956
   Universal (Great Britain) 746,723 March 21, 1956

2. In this rejection the Examiner cited the following additional patents:
   Sams        2,804,048   August 27, 1957
   Krell       1,097,238   May 19, 1913
   Hoffman     365,747     June 28, 1887

3. Defendants cite:
   Hill        489         1837
   Esterow     2,928,373   March 15, 1960
                           (App. filed June 20, 1956)

340 U.S. 147, 156, 71 S.Ct. 127, 95 L.Ed. 162 (1950) ; In re Thomson, 26 App.D.C. 419, 425 (1906); cf. Lyon v. Boh, 1 F.2d 48 (S.D.N.Y. 1924) (L. Hand, J.), rev'd, 10 F.2d 30 (2d Cir. 1926)."

See Gross v. J. F. D. Manufacturing Co., Inc., 1963, 2nd Cir., 314 F.2d 196.

### Claimed Patentability of Device

The device which plaintiff claims is entitled to patent protection relates to projecting and retracting the plunger that holds the writing position of the instrument. The barrel (or housing) of the pen or other writing instrument has a slot in the shape of an inverted T. This form is visible when the conventional clip is removed from the barrel. The clip presses on a spring that projects from the interior mechanism. The projecting portion of the V shaped spring is an extension of the locking leg of the spring that forms a small U; it rides in the slot as the writing mechanism is projected to writing position by pressure on a cap (the cap being the exposed portion of the plunger), and retracted by pressure on a clip. The other leg of the spring is bent outward forming a toe. This toe is lodged in a recess area of the plunger.

Plaintiff claims this is a new and useful improvement in that the rotating movement of the plunger is limited or eliminated by the U shaped end of the spring in the inverted T slot. The combination of this device, with the toed leg of the spring lodged in the lower recess of the plunger, "insures that the force is transmitted obliquely and in ad-

dition gives an added compression on the spring against the slot." [4]

One of the conditions for patentability is that it be non-obvious 35 U.S.C. § 103.[5]

### Prior Art

Are the "differences between the subject matter and the prior art such that the subject matter as a whole would have been obvious * * * to a person having ordinary skill in the art to which the subject matter pertains?"

Plaintiff concedes (plaintiff's brief p. 8) that the guide and latch described as the U shaped portion of the leg of the spring and the inverted T of the slot are conventional. The Court cannot agree with the further statement in the brief that Raszl acknowledged this feature as a teaching of the Liguori patent, by reference to it in column 1 at line 46 (Ex. 5). The claim belies this position. The claim sets out the movement of the U shaped portion of the locking leg through the inverted T shaped slot to restrict the rotative movement of the plunger, as an integral part of the combination comprising a new and useful improvement under 35 U.S.C. § 101.[6] This portion of the claim reads directly on Esterow. In Esterow, the U shape is fashioned from the locking leg of the spring by bending it in a different direction. In that patent, the spring is described as yoke shaped. The movement of the locking leg of the spring is described in one of the Esterow claims in part as follows:

" * * * the narrow portion of the yoke arm having an extremity that always remains in the narrow

---

4. Trans. p. 40—Carreri

5. 35 U.S.C. § 103 states:
"A patent may not be obtained though the invention is not identically disclosed or described as set forth is section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability

shall not be negatived by the manner in which the invention was made. July 19, 1952, c. 950, § 1, 66 Stat. 798."

6. 35 U.S.C. § 101 states:
"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title. July 19, 1952, c. 950, § 1, 66 Stat. 797."

portion of the slot to hold the yoke against the rotative movement within the barrel."

In Liguori as in Esterow, the springs are yoke shaped. The legs of the spring straddle the plunger. The free leg rides against the interior wall of the barrel. In the Raszl patent, the free leg is lodged in the lower recess of the plunger. The Scripto mechanism contains a plunger with stepped recesses (Exhibit A) [7]; It does not however have a yoke spring or V spring or any variation of either; nor does the lower recess serve the same use as that described in the Raszl patent.

■ The validity of the Raszl patent turns on whether the use of the V type spring in combination with the shallow recessed portion of the plunger and inverted T slot is an improvement which would have been obvious to a person having ordinary skill in the art. The test is difficult to apply. Judge Medina, dissenting in Lorenz v. F. W. Woolworth Co., supra, severely criticized the mode of striking down patents on the ground of "obviousness". He states " * * * simplicity, once explained, tends to be obvious to all men." Recognizing the difficulty but mindful of the monition that such obviousness must relate to the "time the invention was made" I am constrained to find the patent invalid. The adaptation by Raszl of known devices performed the same functions as did the known devices. The new combination brought the writing portion of the pen into position in a different way. It did not involve any new idea or principle; it did not solve recognized difficult problems in the art. It was fully anticipated by the prior art and mechanisms in public use.

■■ There is some proof of public acceptance or commercial success. This is proof that the article is useful—not that it is "new and useful" as required by 35 U.S.C. § 101. Proof that it is better than the prior art does not lend patent-ability to the device.[8] The test is non-obviousness. The device fails to meet this test.

Findings of fact and conclusions of law dismissing the complaint were made this day.

---

7. Findings of Fact Nos. 6, 7, 8.

8. Principles of Patentability, Hon. Giles S. Rich, George Washington University Law Review 393–407. Vol. 28, Jan. 1960