**MUNICIPAL STREET SIGN CO., Inc., v. CITY STREET SIGN CORPORATION.**

**No. 236.**

District Court, E. D. New York.

Jan. 8, 1940.

Judah B. Felshin, of New York City, for plaintiff.

C. James Cottrell, of New York City, for defendant.

CAMPBELL, District Judge.

This is an action for the alleged infringement of two patents; 1. Patent No. 1,826,581 issued to Abraham Sprung, Assignor to Municipal Street Sign Co., Inc., for Street Sign, granted October 6th, 1931, on an ap-

plication filed July 25th, 1929, of which claims 4 and 6 are in suit. 2. Patent No. 1,995,869 issued to Abraham Sprung, for Sign Frame Support, granted March 26th, 1935, on an application filed December 28th, 1933, of which claim 3 is in suit; and also for unfair competition.

Defendant has by answer set up the defenses of invalidity and noninfringement as to both patents in suit.

The plaintiff is the owner of both patents by assignment from Abraham Sprung, the first patent having been issued to it directly, and the second patent having been assigned to it, after issuance.

Before the commencement of this action, plaintiff gave defendant the required notice.

Both patents relate to street signs.

The plaintiff is a New York corporation, and has been engaged in manufacturing and selling street signs in the Greenpoint section of the Borough of Brooklyn, within this district, for seventeen years last past, and said Abraham Sprung, is its President.

The defendant is a New York corporation, and has been engaged in the manufacture and sale of street signs in the Greenpoint section of the Borough of Brooklyn, within this district since its incorporation, and John W. Weigele is its Vice President, and Morris Caminetz, is its President. Said John W. Weigele was in the employ of the plaintiff in the manufacture of street signs for over ten years, being discharged after the issuance to him and Morris Caminetz, of Patent No. 2,125,475 on August 2nd, 1938, for street and road sign, on an application filed October 21st, 1937, after the president of plaintiff, learned of the activity of said John W. Weigele, with reference to street signs, not made by plaintiff, while the said John W. Weigele was in the plaintiffs' employ.

The said John W. Weigele was not under contract with the plaintiff to give to it inventions made by him and plaintiff did not acquire any interest in the patent, issued to said Weigele and Caminetz, but the employment of said Weigele by the plaintiff, as a member of its very small staff, familiarized the said Weigele with all of the points of the plaintiff's patent and of the structures which it manufactured thereunder.

The President of the defendant, Morris Caminetz, whose assistance was solicited, while the said Weigele was in the plaintiff's employ, controlled the Greenpoint Iron & Pipe Company, which had been selling to the plaintiff, posts on which its signs were mounted.

Defendant's structure, which it admitted manufacturing and selling, after the issuance of the patents in suit, and before the filing of the Bill of Complaint, (Exhibit 4), is illustrated in defendant's patent No. 2,125,475, (Exhibit 6) and its circular, (Exhibit 5).

The alleged infringing structure of the defendant may be described as follows, using for that purpose numerals shown in the defendant's patent. Like plaintiffs, it is of criss-cross type. On the upper end of a hollow post is a cap 27, having a top wall formed with a central opening 15, and with a plurality of radial teeth 24 diametrically arranged on opposite sides of the center of the top wall. On the cap is a lower unitary sign frame 10, comprising end elements 13, a bottom element, and a top element. The bottom element and the end elements 13 are formed with a circuitous groove or channel. The top element is formed with a longitudinal slot communicating with the channels or grooves in the end elements 13. The longitudinal slot forms resilient side elements provided with a split central boss 23.

There are two frames 10, one above the other. The bottom bar of each is formed with a plurality of radial teeth 22. The teeth 22 of the bottom frame engage the teeth 24 of the cap, whereas, the teeth 22 on the bottom bar of the upper frame engage the teeth 24 of the split boss 23 of the lower frame.

A pair of sign plates 25, may be inserted through the longitudinal slot of each frame to drop there into by gravity, so that the lower and end edges of the plates are received in the circuitous groove or channel in the bottom bar and end elements of the frame. Extending through the split bosses, sign frames and opening 15 in the cap 16, is a through bolt 25a, which plugs or fills the openings in the split bosses. The finial or nut 26 engages the teeth on the split boss to clamp the side elements of the upper frame against opposite sides of a plug or bolt 25a. The teeth 22 of the socket 21 on the lower bar of the upper sign frame, engage the split boss of the lower sign frame, to clamp the side elements thereof against opposite sides of the plug or bolt 25a. The angle between the lower sign frame and the cap may be adjusted by loosening the bolt, lifting the sign frame, rotating the same, then lowering the same so that the teeth 22

on the bottom bar thereof engage the teeth 24 on diametrically·opposite sides of the center of the top wall of the cap, in another angular position.

It was clearly shown on the trial that the angle between the bottom frame and the cap can be varied.

As to Patent No. 1,826,581 in suit:

That patent is for a criss-cross street sign, and is described using the numerals of that patent as follows. On top of a tubular post 10 are carried a pair of sign frames in criss-cross or angular relation, one above the other. Each sign frame is a unitary member made of malleable iron, and has end elements 18, a bottom element 17, and an upper or top member 19. The inner sides of the end elements and bottom elements 17 are formed with a circuitous groove or channel 20. The top member 19 is formed with a longitudinal slot 21 communicating at its ends with the grooves 20 in the end elements 18. The slot 21 in the upper member 19 forms resilient side elements having a central split boss 22. Enterable into each frame through the longitudinal slot 21, are sign plates which may drop by gravity into the frame, so that the lower edges of the sign plates and the end edges thereof are in the grooves 20, in the end elements 18 and bottom element 17.

Inserted in the split boss 22 is a plug 27 which retains the sign plates in the frame and prevents removal thereof. The side elements of the upper member 19 are clamped together by bolts 23 on opposite sides of the plug 27.

Plaintiff bases this suit upon claims 4 and 6 of said patent, which read as follows:

"4. A sign comprising an integral oblong rectangular frame having an interior circuitous groove in its end and lower elements and a longitudinal slot through its upper element in open communication with the groove, a legend bearing plate enterable vertically through the slot to loosely engage in the groove by gravity, a split boss centrally of the members of said upper element and a plug engaged in said boss to retain said plate within the frame."

"6. A sign comprising a unitary metal frame having a continuous channel in the inner edges of its end and lower members and a through reaching, longitudinal passage in the upper member connecting the channel ends, a sign plate adapted to enter the channel through the passage, a plug to confine said plate within the channel, and means operative to clamp the side elements of said upper member against said plug, said side elements being resilient."

Defendant offered in evidence, with reference to this patent, the following prior art patents.

Patent No. 827,355 issued to Frank P. Flowers, for Holder for street signs, granted July 31st, 1906. This is the only one of the patents so offered, that relates to street signs, but it does not show unitary sign frames, a longitudinal slot or a central boss, nor are the plates dropped in by gravity.

Patent No. 979,764 issued to Alexander Humble, Jr., for grave-marker, granted December 27th, 1910. That patent is for a grave-marker, and I cannot see what bearing it has on the patent in suit.

Patent No. 1,418,261 issued to Charles L. Householder, for display stand for discharge certificates, granted May 30th, 1922. That patent is for a display stand or frame for discharge certificates, which does not disclose resilient top elements of the frame, a central split boss, or means to attach the side elements against any plug.

Patent No. 1,822,492 issued to Franklin Lamb, Assignor to Card Display, Inc., for card display, granted September 8th, 1931. That patent is for a card display, which does not disclose a central split boss, resilient upper elements, a member insertable into any boss, or means to retain the cards within the frame.

These patents do not anticipate or limit the invention of claims 4 and 6 of the said patent in suit.

None of these patents were discussed by defendant's counsel, on the trial, and I cannot find that they even suggest the essential elements of claims 4 and 6 of the said patent in suit.

In addition to the presumption of validity that arises from the granting of the patent in suit, we have the added imputation of validity of a lengthy prosecution and commercial success, but, as validity is not in doubt, there is no need of enlarging on commercial success.

Defendant on the trial, and in its brief, contended that claims 4 and 6 are broader than the invention in that they do not state that the plug is frusto-conical or pyramidal, and that such a structure of the plug is necessary to hold the members together properly, and no other structure is indicat-

ed or in any manner suggested by the specifications or drawings of the patent.

This contention is not sustained, not only because of the evidence of the witness Sprung, but also because according to the patent, page 2, lines 1 to 3, it is said; "Disposed in recess 25 is a solid plug 27 tapered in accordance with the interior walls of the recess", and therefore, the form of the plug is determined by the form of the recess.

[redacted] The patent in suit is valid.

We will now consider the question of infringement.

Defendant, in its sworn answers to the interrogatories propounded by plaintiff herein, admits infringement as all of the interrogatories but the first interrogatory are answered in the affirmative, and while defendant denied in its answers to the first interrogatory that its structure, manufactured and sold in this district, had the frame having an interior circuitous groove in its end and lower elements, its Vice President, John W. Weigele, when called as a witness, admitted on the trial that it had such a groove.

On the trial defendant attempted to change its answers to the interrogatories, but as that would have required a completely new preparation of plaintiff's case, and the reasons for such change were not impressive, and as the answers had been made without coercion or duress, it was not allowed.

It is not necessary for plaintiff to rely on the answers to the interrogatories, as an examination of the defendant's admitted structure, (Exhibit 4), its patent and circular, show that both claims 4 and 6 of said patent in suit, read on defendant's structure.

[redacted] The said patent in suit is not a pioneer patent and, therefore, is not entitled to a wide range of equivalents, but it is entitled to a range of equivalents to protect the invention of the patent in suit.

Defendant strongly contends that it has no plug, and that the bolt 25a is not the equivalent of the plug 27 of the patent in suit.

[redacted] I cannot agree with this contention, because although the bolt may perform additional functions to those of the plug in the plaintiff's patent, that, of itself, does not relieve from infringement.

[redacted] It does not seem to me that plaintiff is stretching the meaning of the word "retained", as it clearly means to hold, and as here used, it means to prevent removal, except by using a tool, and the bolt used by the defendant would serve the same purpose. The sign is never turned up-side down in practice, and if the bolt or plug were not within the split boss, the sign plates could be taken out, but if the bolt or plug were within the split boss, the sign plates could not be taken out.

Defendant infringes claims 4 and 6 of that patent in suit.

As to Patent No. 1,995,869 in suit:

That patent discloses a post 5, on which is mounted a cap 6, having a top wall. There are a pair of lugs 17 and 18 on the top wall, diametrically arranged on opposite sides of the center of the top wall, also a sign frame 21 having a bottom bar 20, and a plurality of radial teeth 19 projecting from the bottom bar, and adapted to engage the lugs 17 and 18, to enable the frame to be held in various positions of an angular adjustment.

Frame 21 is attached to the cap by the central bolt 23 passing through an opening in the bottom bar 20, and through an opening in the top wall of cap 6. The angular position of the frame 21 may be changed by loosening the bolt, and permitting the frame to be lifted and rotated to lock with lugs 17 and 18 in a new angular position. If the caps are screwed to the upper end of the post, as shown in Fig. 4 of the said patent, the angular position between the cap and the post is uncertain and, therefore, it is necessary that the angular position of the sign frame with respect to the cap can be changed.

Plaintiff bases this suit on claim 3 of that patent, which reads as follows: "3. In a street sign device, a post, a cap fitted over the upper end of the post, said cap having a top wall provided with a pair of lugs diametrically arranged on opposite sides of the center thereof, a sign frame having a bottom bar, and a plurality of radial teeth projecting from the bottom bar, said teeth being adapted to engage said lugs to enable the frame to be held in various positions of angular adjustment."

Defendant offered in evidence, with reference to this patent, the following prior art patents.

Patent No. 727,065, issued to Arthur D. Benham, for clamping device for street-signs, granted May 5th, 1903. That patent shows no angular adjustment between the

cap 31 and the lower sign, no sign frame, and, therefore of course, no sign frame having a lower bar formed with radial teeth. It does not anticipate.

Patent No. 800 031, issued to Jerome Travis, Assignor to the American Street Sign Company, for street sign, granted September 19th, 1905. That patent is in no sense an anticipation of the said patent in suit, as it shows no means whatever for adjusting the angle between a street sign and a cap.

Patent No. 1,157,515, issued to Joseph N. Early, for street sign, granted October 19th, 1915. That patent shows a sign frame made in two rectangular parts bolted together by means of bolts 37 passing through the openings 36 at the ends of the sections of the frame. These two parts of the sign frame must be entirely disassembled and separated before they can be reassembled with the post. The cap 15 is formed with an up-standing post 14. The parts or sections 25 of the frames must be separated to get the sign plates out of or into the frames. In that patent there is no sign frame having a bottom bar formed with radial teeth. The post 14 is formed with longitudinal ccrrugations 23, to lock the frame against rotation, but there are no teeth on the top wall of the cap, diametrically arranged on opposite sides of the center of said top wall.

This is the only one of the patents offered in evidence, by the defendant, which was discussed by the defendant, on the trial.

In assembled condition the sign frame of that patent cannot be lifted or moved longitudinally of the central post, nor can it be rotated. The teeth on the sections 25 project inwardly and not downwardly, which makes it necessary to separate said sections in order to disengage the teeth from the corrugations on the post.

That patent does not anticipate claim 3.

Patent No. 1,649,268, issued to Ray A. Thompson, Assignor to Alumoyd Sign & Signal Co., for sign, granted November 15th, 1927. That patent shows a cap 7, which does not have a top wall formed with lugs diametrically arranged on opposite sides of the center. This patent shows no frame. The sign has an integral web 18. It does not disclose a sign frame having a bottom bar formed with radial teeth. The cap in that patent is formed with a polygonal socket to receive the polygonal plug on the sign. A set screw retains the sign on the cap, but the set screw cannot effectively hold the sign locked to the cap. In that patent the plug must have a very fine fit within the socket, because if there were any clearance, it would permit a turning movement of the sign. On the other hand, it would be difficult to insert the plug into the socket if a fine fit were made.

In plaintiff's patent, the necessity for a fine allignment is obviated by the provision of teeth on the bottom bar of the frame. which easily engage with lugs on the cap. Also, a finer adjustment may be attained by the use of teeth. In the Thompson patent, only one angular adjustment is possible, except the right angular relation. An increase in the number of faces of the polygonal plug would cause danger of rotation of the plug in the socket. A larger number of angular adjustments are possible with plaintiff's sign.

On the trial defendant contended that the plaintiff's said patent was inoperative, and attempted to prove that angular adjustment was neither possible nor necessary between the sign frame and its cap. This defense was not pleaded as required by Statute, Rules of Civil Procedure for District Courts, rule 8(b), 28 U.S.C.A. following section 723c, superceding 35 U.S. C.A. § 69, but that need not be considered here, as the defendant's witness, Weigele, on cross-examination, reversed his testimony on direct examination, and admitted that such adjustment was possible and necessary.

I cannot agree with defendant's contention that the said patent in suit erroneously states that the lugs with which the cap is provided, and the radial teeth projecting from the bottom bar of the frame, are for adjusting purposes, because I find that the said lugs and teeth functioned in adjusting the frame.

Defendant's chief reliance is on the Early patent No. 1,157,515, but that patent does not meet patent No. 1,995,869 in suit, and to do so, it would have to be reconstructed, and even if teeth members were shown in other patents for use for adjusting purposes, that would not show that there was no invention in the said patent in suit, as that is only one element of a combination and the invention consists of much more than merely providing the teeth.

The patent No. 1,995,869 is valid.

Infringement of claim 3 of that patent in suit was clearly shown. That claim reads

on the defendant's structure, and the patent No. 1,995,869 in suit clearly shows invention over the prior art.

The grant of the patent No. 2,125,475 to Weigele and Caminetz did not relieve from infringement, because whether it be for an improvement, or not, it is for a product which infringes the plaintiff's patent in suit.

Defendant infringes claim 3 of plaintiff's patent No. 1,995,869 in suit.

### Unfair Competition.

This brings us to a consideration of the question of unfair competition, which is based upon the following facts.

■ Plaintiff and defendant are in direct competition as both sell street signs to the same class of customers.

Defendant's Vice President was employed by plaintiff for about ten years thereby obtaining knowledge of plaintiff's entire business. Defendant's President controlled the organization, which supplied pipe to the plaintiff, frequently visited plaintiff's place of business and on many occasions went into plaintiff's place of business with plaintiff's employees. Plaintiff's name is "Municipal Street Sign Co., Inc.". The meaning of "Municipal" and "City" is the same. The remainder of the name in each instance is the same with the exception that plaintiffs' ends with "Co., Inc." and the defendant's ends with "Corporation".

Defendant prints its corporate name on its stationery, billheads and other literature in the identical script used by plaintiff, on the same character of papers.

Both plaintiff and defendant are located in Greenpoint, Brooklyn, and are two of a very small number of manufacturers wholly devoted to street sign business.

A former salesman of plaintiff is employed by defendant. The Vice President of defendant, while still in the employ of plaintiff, tried to interest a number of its agents in his device.

The circular issued by defendant is substantially the same size and general get-up as the circular issued by plaintiff, and is folded in exactly the same manner, that is, into three sections, one on top of the other. Guarantees against fadeing, chipping and peeling, are contained in both of them.

A Railroad Company, acquainted with plaintiff, sent invoices of defendant, to plaintiff.

Patented features for years associated with plaintiff's signs are stressed in defendant's circulars, which, like plaintiff's, is directed to a "boltless" street sign in which the sign plates drop into unitary sign frames through slots in the top to be locked in place within the frame. A sign in which a frame may be angularly adjusted relative to the cap is shown in the circular of the defendant.

Plaintiff's patent No. 1,826,581 in suit, covers a unitary sign frame into which the sign plates drop by gravity.

Plaintiff's patent No. 1,995,869 in suit, covers the adjustability of the angle of the sign frame.

Defendant's sign is an infringement of two of plaintiff's patents. Simulation of plaintiff's sign is one element of the defendant's unfair acts.

The sign of the defendant was produced by defendant's Vice President, while still employed by plaintiff, and competition with plaintiff was planned and perpetrated while defendant's Vice President was still collecting salary from plaintiff.

A comparison of plaintiff and defendant's signs, (Exhibits 7, 8 and 4), shows that the signs are substantially similar in appearance and size and the sign plates are of exactly similar dimensions.

The principal purchasers of street signs are, cities, municipalities and towns throughout the United States by their officials and engineers often on the recommendation of officials and engineers already acquainted with plaintiff's product.

■ Of course, it is not necessary for plaintiff to show actual deception, if deception is the actual probable result of defendant's acts. Notaseme Hosiery Co. v. Straus, 2 Cir., 201 F. 99; Bernhard Ulmann Co., Inc. v. Wool Novelty Co., Inc., 37 U.S.P. Q. 153; Charles Broadway Rouss, Inc. v. Winchester Co., 2 Cir., 300 F. 706 and Coty, Inc. v. Parfums De Grande Luxe, Inc. et. al., 2 Cir., 298 F. 865, 870.

■ The action for unfair competition is based upon fraud and proof of actual fraudulent intent is not required where the necessary and probable tendency of defendant's conduct is to deceive the public and pass off his goods as, and for, those of plaintiff. John H. Woodbury, Inc., v. Wil-

liam A. Woodbury Corporation et al., D. C., 23 F.Supp. 162; Florence Mfg. Co. v. Dowd et. al., 2 Cir., 189 F. 44.

It is true that the Vice President of the defendant, while in the employ of the plaintiff, made the application with the President of the defendant, for the patent which the defendant now owns, but he was not under any contract to turn over his inventions to the plaintiff, and the mere fact that he was in plaintiff's employ, did not prevent him from making inventions or obtaining patents, nor does it follow, because I have found that the defendant is infringing the plaintiff's patents, that said Vice President of the defendant, was not acting in good faith, because while I do not so find, it may well be that the patent of the defendant is an improvement on plaintiff's patent, which, of course, did not relieve from infringement, but I do not believe, nor am I willing to find, that his actions in patenting what he thought was an invention, and obtaining the financial support of the President of the defendant to market the product of that patent, constituted unfair competition.

There is no evidence that the defendant's products were wrapped in a manner the same as the product of plaintiff.

It is true that the circular of the defendant is folded the same as that of the plaintiff, and contains substantially the same guarantees, but there has been no slavish copying of the color nor of any part of the signs, except those parts which it was necessary to show, which were similar; therefore, I do not think that the circulars in and of themselves constituted unfair competition. Of course, there are similarities, but they are in portions which are necessarily shown, and I do not believe that it can be said that the circular was deliberately made up to copy that of the plaintiff, or to lead the purchaser to believe that it was purchasing plaintiff's product, when it actually bought that of the defendant.

The use of the same script for letterheads, bills, etc., standing alone, is not suffi-cient, it seems to me, to show unfair competition, but their continued use if other circumstances arise may be held in the future with such circumstances to show unfair competition.

That defendant's Vice President sought to interest agents of the plaintiff in his patent does not constitute unfair competition under all the circumstances.

This brings us to the consideration of the name, which, in reality, is the main question.

It is true that the meaning of the word "Municipal" is the same as the meaning of the word "City" but they are not words which sound alike, nor do I believe the impression that would be made on the mind of the ordinary purchaser would be such that it would mistake one for the other, and we must not forget that it is not the general public that is the purchaser of street signs, but that the purchasers thereof are officials and engineers of public sub-divisions of the State, who would ordinarily be well informed about the company from whom they were purchasing, and would not be deceived by names of such different sounds, even although the meaning of them might be the same.

Unfair competition has not been shown.

Patent No. 1,826,581 in suit, as to claims 4 and 6, is valid and infringed.

Patent No. 1,995,869 in suit, as to claim 3, is valid and infringed.

A decree may be entered in favor of the plaintiff against the defendant with injunction and two-thirds costs, and the usual order of reference, as to both the first and the second patents in suit, and in favor of the defendant dismissing the claim for unfair competition without costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the Court, as provided by the Rules of Civil Procedure, and the Rules of this Court.