Karl E. STIEGELE and Speidel Corporation, Plaintiffs-Appellees,

v.

J. M. MOORE IMPORT–EXPORT CO., Inc., Moore Products Corporation and Joseph Mitchell Moore, Defendants-Appellants.

No. 160, Docket 27781.

United States Court of Appeals Second Circuit.

Argued Dec. 4, 1962.

Decided Jan. 10, 1963.

Robert L. Thompson, Boston, Mass., (Dike, Thompson, Bronstein & Mrose, Boston, Mass., Harry R. Pugh, Jr., New York City, Frank B. Wallis, Goodwin, Procter & Hoar, Boston, Mass., on the brief), for plaintiffs-appellees.

Granville M. Pine, New York City (Thomas P. Dowling, Morgan, Finnegan, Durham & Pine, New York City, on the brief), for defendants-appellants.

Before LUMBARD, Chief Judge, and SWAN and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

This is an appeal from an interlocutory judgment of the United States District Court for the Southern District of New York in a patent infringement suit.

Judge Metzner found that the patent was valid and that it had been infringed, and entered an appropriate order for an injunction and an accounting of damages. The appellants contest both of these findings and in addition argue that they were improperly denied leave to amend their pleadings at a late stage of the proceedings below to add additional defenses and a counterclaim. We affirm.

The plaintiffs, Karl E. Stiegele and Speidel Corporation, are respectively the patentee and exclusive licensee of patent No. 2,689,450, issued on September 21, 1954, which covers a type of expansible bracelet peculiarly suitable for use as a watch band. The defendants are the J. M. Moore Import-Export Co., Inc., which imports, and the Moore Products Corporation, which distributes, allegedly infringing bracelets manufactured abroad, and Joseph Moore, president and sole stockholder of both corporations.[1]

For many years there has been a demand for a metallic expansible watch bracelet which combines an attractive appearance with easy, general flexibility. The Stiegele bracelet accomplishes this by the interaction of three parts: hollow links, U-shaped connectors, and leaf springs. The links are arranged in two staggered rows, one on top of the other, links in one row being attached to links in the other by the connectors, one leg of which is inserted into the end of a link in the upper row and one leg into the end of a link in the lower row. The legs of two connectors are inserted into both ends of each link, thus joining the link to the lower (or upper) links to its right and left. Within each link is a leaf spring which presses on the connector legs and maintains the connectors in an upright position, thus keeping the bracelet contracted unless tension is exerted to expand the bracelet. When the bracelet is stretched, the legs are turned sideways inside the links. The legs are wider than they are thick, so that when they are turned they depress the leaf spring. When the tension is relaxed, the spring pushes the legs back up, returning the bracelet to its contracted position. Since the legs at the ends of each of the links are not attached to each other and can turn independently, one side of the bracelet can be expanded while the other remains contracted, permitting lateral flexion.

The arrangement of parts used in the Stiegele bracelet is concededly used in the defendants' bracelets. There is, therefore, no question that if the patent is valid and covers this arrangement, the defendants are infringers. They claim, however, that the Stiegele patent is either not valid at all or is limited to bracelets which employ a notch arrangement for holding the various parts together. This latter arrangement is described in two of the Stiegele patent claims which are not in suit. The defendants' bracelets do not employ the notch arrangement; they use another means, not covered by the Stiegele claims, for keeping the bracelet intact.

Taking the defendants' contentions in logical order, they argue first that the Stiegele patent is invalid on various grounds. They contend that the parts used are old, and that their particular arrangement in the bracelet is anticipated by prior art and does not constitute the "substantial innovation * * * for which society is truly indebted to the efforts of the patentee" which merits issuance of a patent. Sinclair & Carroll Co. v. Interchemical Corp., 325 U. S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945). We have examined the prior patents on which the defendants rely and are satisfied, as was Judge Metzner, that the plaintiffs' bracelet does represent a significant advance. Far from demonstrating the patentee's lack of inventiveness, the earlier patents show that he has achieved the result for which others had long labored but which they had achieved only incompletely at best. Links, springs, and connectors had, of course, long been in use, but "a novel combination of old

---

1. J. M. Moore Import-Export Co., Inc. was dissolved in 1960. Since then, Moore Products Corporation has handled both importing and distributing.

elements which cooperate with each other so as to produce a new and useful result is patentable.". Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 247 F.2d 343, 347 (2 Cir. 1957), cert. denied, 355 U.S. 952, 78 S.Ct. 537, 2 L. Ed.2d 529 (1958).

■ While modern advertising techniques cast doubt on the reliability of commercial success as an indicium of novelty, see Warner Bros. Co. v. American Lady Corset Co., 136 F.2d 93, 94–95 (2 Cir. 1943); cf. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235 (1949), striking commercial success is a relevant fact. See Georgia-Pacific Corp. v. United States Plywood Corp., 2 Cir., 258 F.2d 124, 133, cert. denied, 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958). The bracelets embodying the Stiegele arrangement have had very great success in the United States and in world wide markets. See the district court's Finding of Fact No. 32. From our examination of a variety of bracelets, introduced in evidence, we think it clear that the success of the Stiegele bracelet is due to its evident superiority over its predecessors. In addition to its attractive appearance and great flexibility, the bracelet, as Judge Metzner found, was "cheaper to produce, more durable, made adjustment of length easy at the source of retail purchase, [and] reduced cost of repairs * * *."

■ The defendants assert invalidity also on the ground that the patent claims now in suit do not define an operable structure, since they omit (1) explanation of a means to prevent the bracelet from being expanded to a point of no return beyond which it will not contract when tension is relaxed, and (2) explanation of a means for holding the parts together. Overexpansion is prevented by the relationship between the dimensions of the connector legs and the depth of the space within the link between the spring, fully depressed, and the upper or lower link wall. The district court found, and we agree, that this relationship is defined in the claims sufficiently to permit a person skilled in the art to incorporate it as a matter of routine into a device based on the Stiegele patent. We agree too with the district court's finding that the claims in suit, in order to be valid, need not be read together with the claims which include a means for holding the parts together. That some holding device is necessary would be evident to anyone versed in the art, and a variety of such devices is well known. The omission of an element necessary to the operation of an invention must be distinguished from the omission of an element which is a part of the invention itself. The former is not fatal.

"Admitting that additional elements are necessary to render the device operative, it does not necessarily follow that the omission of these elements invalidates the claim, or that the precise elements described in the patent as *rendering* it operative must be read into the claim. * * * In such case any appropriate means for making it operative will be understood. Otherwise the infringer might take the most important part of a new invention and, by changing the method of adapting it to the machine to which it is an improvement, avoid the charge of infringement. The invention of a needle with the eye near the point is the basis of all the sewing machines used; but the methods of operating such a needle are many, and if Howe had been obliged to make his own method a part of every claim in which the needle was an element, his patent would have been practically worthless."

Deering v. Winona Harvester Works, 155 U.S. 286, 302, 15 S.Ct. 118, 124, 39 L.Ed. 153 (1894). Since the inventive novelty of the patentee's bracelet does not lie in the provision of a means for holding the parts together, cases cited by the defendants in which patentable novelty depended on the omitted element, e. g., Permutit Co. v. Graver Corp., 284

U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163 (1931), are not in point.

On the question of validity, the defendants argue finally that the patent claims are ambiguous and fail to meet the statutory requirement, 35 U.S.C. § 112, of clarity and definiteness in the specification and claims. See General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 368–369, 58 S.Ct. 899, 82 L.Ed. 1402 (1938). As discussed more fully hereafter in connection with another point, we think that no one who has the degree of skill reasonably to be expected and who examines these claims with care would fail to understand the nature of the invention claimed.

The defendants' contention that the patent, if valid, covers only bracelets which embody the notch structure not employed in the defendants' bracelets is based on the doctrine of file wrapper estoppel. The "file wrapper" is the "written record of the preliminary negotiations between the applicant and the Patent Office for a patent monopoly contract." D & H Electric Co. v. M. Stephens Mfg., Inc., 233 F.2d 879, 883 (9 Cir. 1956) (Footnote omitted). The doctrine which the defendants assert is that a patentee who has limited or modified his claim in order to avoid rejection of his application for a patent may not thereafter claim for his patent a broader interpretation which would include elements eliminated or leave out elements added by the limitations or modifications. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940), opinion amended, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132 (1941); Tampax, Inc. v. Personal Products Corp., 123 F.2d 722 (2 Cir. 1941), cert. denied, 316 U.S. 665, 62 S.Ct. 946, 86 L.Ed. 1741 (1942); D & H Electric Co., supra.

There is no estoppel here. The file wrapper unequivocally demonstrates that throughout the proceedings in the Patent Office the patentee made two distinct claims; one including no means for holding the parts together, and the other adding to the broader claim a specific claim covering the notch structure. The original patent claim follows this pattern. Claims 1, 2, 3, and 6 refer broadly to the link-spring-connector mechanism; claims 4 and 5 describe the notch structure. (There were four additional claims, deleted in subsequent negotiations, for a means of connecting the bracelet to a watch.) This pattern was continued in various amendments to the claims and appears in the final claims, which were accepted. Claims 1 and 2 and 5 through 9, which are the claims in suit, describe the general functioning of links, springs and connectors; claims 3 and 4 describe the notched springs and legs which are the patentee's particular means for holding the parts together. There is nothing to indicate that the patentee ever intended the narrow claims to be read into the broad claims.[2]

In one amendment to the specification, the patentee added a particular reference to the notch structure. See amendment of March 12, 1953. A limitation inserted into the specification can in some circumstances work an estoppel just as a limitation of claims. See I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 436–441, 47 S.Ct. 136, 71 L.Ed. 335 (1926); cf. Smith v. Snow, 294 U.S. 1, 11, 55 S.Ct. 279, 79 L.Ed. 721 (1935). But the specification of this patent manifests no intention to confine the patent to bracelets embodying the notch structure. The notches were described in the original specification, negativing the defendants' suggestion that this limitation was added to avoid rejection. More-

---

2. In a prior case, Judge Boldt, sitting in the United States District Court for the District of Arizona, found that there had been infringement of the same claims as those involved here, although, as in this case, the defendants had not used the means for holding the parts together described in the Stiegele claims 3 and 4. Stiegele v. Bentley & Schibelle Trading Co., Phoenix, Civ. # 3028, March 22, 1960.

over, the amendment on which the defendants rely focuses primarily on features of the invention other than the notch structure.

In addition to the evidence of a consistent intention to secure a patent on the assemblage of links, springs, and connectors, there is strong evidence in the Remarks appended to the final claims that there had been no abandonment of the broad claim. The Remarks make plain that the essential feature of the connector, so far as the inventor was concerned, is that the legs be wider than they are thick, to ensure contraction of the links when the tension causing expansion is reduced. Accompanying the Remarks, was a diagram showing an arrangement of links, springs, and connectors in which the springs and connectors are not notched. The discussion of claims 3 and 4, which deal specifically with the notch arrangement, indicates that this aspect of the invention was subsidiary.

The discussion in the Remarks of prior art contains no suggestion whatever that the notch arrangement was relied on by the patentee to show his invention's advance over prior art; indeed, there could be no such suggestion, since claim 1 to which this portion of the Remarks is addressed does not mention the notch arrangement. The claimed advance was the combined effect of a connector leg which is wider than it is thick and a leaf spring which forces the leg back to a straight position when tension on the bracelet is relaxed. If the notch arrangement were relied on to show inventiveness, as the defendants suggest, there would surely have been some mention of it in the discussion of prior art.

The defendants assert that they were misled by the language used by the patentee in the claims and specification. They urge particularly that the patentee's use of the words "engaging", "urging", and "wedging" to describe the general operation of his invention are more apt, and misleadingly so, to describe the holding function of the notches on the springs and connectors. But there are readily apparent differences between the language used by the patentee to refer to the flexing function of the springs and legs and his language when referring to their holding function. Compare, for example, claim 1 of the final claims, where the words to which the defendants object are used to refer to the flexing operation, and claim 3, where the holding function of the notches is described. Although the words to which the defendants object would in some contexts carry the meaning which the defendants ascribe to them, the patentee's characteristic use of them in the present context avoids any ambiguities. The defendants ignore the constant emphasis given the general arrangement of parts and the obviously peripheral treatment of the notch structure. The claims and specification, as originally stated, as amended, and as finally accepted indicate the patentee's reliance on the arrangement of parts to show inventiveness; there is no indication that he considered this arrangement insufficient to secure a patent or that he believed his contribution to the art of link bracelets to be a new means of holding an accepted arrangement of parts together. In our judgment, no one who examines the file wrapper could reasonably believe that the patentee did not intend to secure a patent on the link-spring-connector assemblage which the defendants used.

■ The defendants' final argument is that they were improperly denied leave to amend their pleadings to assert the defense of license and release and the defense and counterclaim of the plaintiffs' violation of the antitrust laws. On March 16, 1959 the defendants answered the complaint, filed on February 4. By way of defense, the answer asserted only the invalidity of the patent, and raised no counterclaim. More than two years later, on August 29, 1961, the defendants filed a motion under Rules 13 and 15 of the Federal Rules of Civil Procedure for leave to serve an amended and supplemental answer and counterclaim. Chief Judge Ryan heard the motion and allowed the pleading of additional defens-

es relating to invalidity of the patent, but did not allow the defenses of license and release and antitrust violation or the antitrust counterclaim. Order dated September 11, 1961. In a later order dated September 28, 1961, Judge Ryan after reargument again denied leave to amend and also denied the defendants' motion under Rules 36(a) and 6(b), Federal Rules of Civil Procedure, for an order permitting them to file late responses and objections to a request for admissions filed by the plaintiffs on December 1, 1960, which the defendants had left unanswered. Rule 36(a) provides that failure to answer a request for admissions constitutes an admission of the matter in question; the facts involved in the request, if admitted, precluded the license and release defense. By an order dated October 30, 1961, this court denied the defendants' petition for a writ of mandamus directing the district court to grant the same relief which they now seek on appeal. Although the denial of a writ of mandamus leaves the same issues open for reconsideration on appeal, we find no error in the orders of the district court for reasons sufficiently stated by Judge Ryan in denying the defendants' original motion to amend, notably the very late stage of the proceedings at which the amendments were offered.

With respect to the antitrust defense, the defendants assert that the effect of 35 U.S.C. § 282,[3] is to require a court to grant leave at any time, however late in the proceedings, to plead the defense that the plaintiffs have violated the antitrust laws. Section 282 requires that the defense of unenforceability be pleaded; the defendants concede that this requirement applies to the defense which they seek to raise.[4] They argue, however,

that the statute must be construed in the light of the rule that the admissibility of evidence pertaining to patent misuse, which is essentially an "unclean hands" defense, "does not depend upon the diligence or want of diligence of a party to the case," Frank Adam Electric Co. v. Westinghouse Electric & Mfg. Co., 146 F.2d 165, 167 (8 Cir. 1945), but rather pertains to the public interest and the integrity of the court and may be taken up at any time. See Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp., 154 F.2d 814 (2 Cir.), cert. denied, 328 U.S. 859, 66 S.Ct. 1353, 90 L.Ed. 1630 (1946); Gynex Corp. v. Dilex Institute of Feminine Hygiene, Inc., 85 F.2d 103, 106 (2 Cir. 1936); General Industries Co. v. Birmingham Sound Reproducers, Ltd., 194 F.Supp. 693 (E.D.N.Y.1961). Therefore, the defendants argue, the effect of § 282 "is to require that leave should be given a party to plead the defense formally at any stage of the case." Appellants' Brief, p. 77.

We think that the defendants' position cannot be sustained. Suits for patent infringement are peculiarly affected with a public interest and in such suits the proper application of the doctrine of unclean hands "not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public." Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 815, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). But it does not follow from the fact that a court may freely grant leave to plead and prove the defense of unclean hands in order to avoid assisting a wrongdoer or to protect the public that it may never deny leave to raise this defense no matter what the

3. Enacted into law by Act of July 19, 1952, 66 Stat. 792, 812.

4. Prior to the enactment of § 282, it was possible for the defendant in a patent infringement suit to plead only the general issue and thereafter prove various affirmative defenses. 35 U.S.C. § 69 (1946). Section 282 brings the practice in patent cases into conformity with Rule 8 of the Federal Rules of Civil Procedure. See Notes of Advisory Committee on Rules, 28 U.S.C.A. following Rule 8. Compare cases holding that the prior practice in patent cases had been superseded by the enactment of the Federal Rules. Dugan v. Sperry Gyroscope Co., Inc., 35 F.Supp. 902 (E.D.N.Y.1940); Municipal Street Sign Co., Inc. v. City Street Sign Corp., 30 F.Supp. 795 (E.D. N.Y.1940).

circumstances. The chancellor's conscience and the public interest are better protected by the provisions of Rule 15, Federal Rules of Civil Procedure, which directs the court to grant leave to amend pleadings "when justice so requires" than by the rigid rule for which the defendants contend, that the defense of antitrust violations may be raised at any time whatever, even at trial, although the plaintiff may have had no notice that he would be required to defend against such a charge and the defendant has given no explanation of his delay in asserting the defense. The special nature of the defense of unclean hands should lead courts to grant leave to amend pleadings in this respect more freely than is usually the case; and we do not say that under § 282 a court may not in appropriate circumstances deny relief on the ground of unclean hands even in the absence of pleadings. But in the light of all the circumstances of this case, particularly the defendants' inadequately explained delay in proffering the antitrust defense, we think that the district judge did not abuse his discretion in denying the motion to amend.

Affirmed.