**The W. E. BASSETT COMPANY, Plaintiff,**

v.

**The H. C. COOK COMPANY, Lighter Corporation of America, Britton Manufacturing Company and Ernest G. Britton, Defendants.**

**Civ. A. No. 6532.**

United States District Court
D. Connecticut.

Oct. 23, 1963.

See also 201 F.Supp. 821.

Stoddard, Perskey, Egan & Cobey, New Haven, Conn., Beer, Richards & Haller, Roy C. Hopgood, New York City, for plaintiff.

Patterson, Belknap & Webb, New York City, Pennie, Edmonds, Morton, Barrows & Taylor, Washington, D. C., Ronald M. Stark, Milford, Conn., William K. Bennett, Ansonia, Conn., for defendants.

CLARIE, District Judge.

This action was commenced pursuant to 28 U.S.C. §§ 1338(a, b), 1400(b), 35 U.S.C. § 281 and 15 U.S.C. § 1121 and it alleges several separate and distinct claims related to patents, trademark infringements, and unfair competition. It alleges the patent infringement of a novelty pocket knife, a finger nail and toe nail clipper, several trademark infringements applicable to each of said items and multiple claims of unfair competition affecting these manufactured products. However, only the patent issues were tried at this time in accordance with the pre-trial order of March 20, 1961. Although the trial educed an exhaustive review of the prior art in the pocket knife and nail clipper industry, the pertinent issues of the case remain basically simple and clear cut.

The Court finds the plaintiff's knife patent to be valid and infringed by the defendant, Lighter Corporation of America, and contributorily infringed by the defendant, The H. C. Cook Company. The Court finds the clipper patent to be invalid.

### PART I.

### THE POCKET KNIFE PATENT DISCUSSION OF ISSUES

On March 14, 1956, a new patent application for a "combined tool" was filed by Edward J. Pocoski and William G. Hennessey, which was thereafter approved by the patent office on January

29, 1957, as patent No. 2,779,098, PTX-44. Prior to final approval, an instrument executed by both assignor inventors was officially recorded in the United States Patent Office on December 7, 1956; it assigned all their rights in said patent to the plaintiff, The W. E. Bassett Company, PTX-45.

This patented item is non-technically described as an assembly of three blades which fold into a one piece metal case or handle. The blades originally consisted of a finger nail file, a bottle opener and a knife; however, the principal of operation was subsequently adapted to multiple other tools, such as a screwdriver, et cetera. These blades or tools are held into the sheet metal case by means of an eyelet, so that each one individually or all three together may be rotated either outwardly into extended positions for functional use or folded back inside the case in a closed latent position.

The new patented feature concerns the construction in the handle member near the eyelet position, and has to do with a separated bridge abutment against which the tools open when fully extended for use and an integral "U" shaped spring which terminates short of the end of the channel handle, and is lanced out of the back of the one piece metal case by splitting the metal to form a tongue in such a way as to deflect when any blade is opened. The hub of each blade is so shaped that a cam action occurs at the hub as each is being opened or extended and thereafter the flat portion comes in contact with the spring in either a fully opened or closed position, so that the position of the blade is thus fixed and stabilized. It is this combination of an integral spring and a separate rigid abutment in a single sheet metal handle that comprises the essential elements of the patented product. (See Tr. 2165–2166).

The prior art in the pocket knife category clearly indicates the previous existence of a one-piece folded metal case

or handle with a lanced out integral spring.[1] It also discloses an integral bridge or abutment connecting the sides of a knife handle.[2] However, no prior art was evidenced by either party which combined the essential features of both advancements in this area.

Thus, the basic question to be resolved is whether or not the combined technique used and patented in this alleged new creation is simply an aggregation of elements found in prior patents in the art or in different devices previously in general use and out of which no new functional relationship arises from their combination, foreseeable and within the competence of a skilled workman; or does it constitute in its entirety a combination of such a nature as to bring into being a new and useful patentable result. The parties are in agreement that if the patent is valid, defendants Cook and Lighter Corporation are liable for infringement, in that their product was admittedly copied from that of the plaintiff.

The defendants on the other hand claim that when this patent was issued by the United States Patent Office, its granting action was erroneously based upon a record which showed only three references cited: namely, Story, patent No. 254,404, dated February 28, 1882; Hallvarson, patent No. 1,365,487, dated January 11, 1921; and Beal, Great Britain patent No. 17,368, dated September 12, 1894; and that all of these had integral springs, but did not have separate abutments. It is their claim that if the examiner had more carefully and thoroughly searched the records he would have become aware of the Perry patent (DE 22A) which provided for an integral stop or abutment; however, admittedly this Perry structure itself does not have an integral spring of the type in issue.

A careful review of the record of all the patents referred to in the prior art by both parties, including but not limited to defendant's exhibits, DE 21A; DE

---

1. (DE 21A) Patent No. 254,404 to Herbert Story for pocket knife granted February 28, 1882 on application filed May 21, 1881.

2. (DE 22A) Patent No. 71,211 to Franklin B. Perry for "improvement in Pocket Cutlery" granted November 19, 1867.

21B; DE 21C; DE 22A; DE 22B; DE 22C; clearly indicates that no where in the prior art has there been a successful combination of the beneficial aspects of the patented item namely, a rigid abutment and an integral spring constructed from a one piece metal case or handle. This conclusion is also substantiated by an analysis of all the various patents demonstrated on plaintiff's exhibit PTX-117, and the corresponding patent claims disclosed in PTX-114.

■ Actually, what are the benefits of this new type of patented construction? The one or more blades are pivoted at one end of the case on an eyelet member which extends through both sidewalls; that eyelet is fastened in such a way as to give slight frictional resistance to the positioning blades, so that they won't flop loosely around. The separated rigid bridge or abutment formed by the lanced operation provides an integral connection between the sides of the case, so as to stabilize and prevent skewing of the eyelet alignment and cause its weakening and loosening under stress. If it were not there, the lancing would weaken the pivoted end of the knife case and the spacing between the side plates would provide a more flexible structure, than with the fixed rigid bridge and tend to interfere after hard usage, with the smooth and controlled frictional operation of the blades. (See Tr. 2172, 2174, 2185). Furthermore, it provides a rigid abutment against which any selected blades may rest for accurate positioning for firm positive handling and use of the selected blade; while at the same time the spring is relied upon only to serve as a spring and its useful function as such is not impaired by its being simultaneously utilized as an abutment to hold each extended blade as was the case in the prior art utilizing an integral spring.

> " 'a novel combination of old elements which cooperate with each other so as to produce a new and useful result is patentable.' Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 247 F.2d 343, 347 (2 Cir. 1957), cert. denied, 355 U.S. 952, 78 S.Ct. 537, 2 L.Ed.2d 529 (1958);" Stiegele v. J. M. Moore Import-Export Co., 312 F.2d 588, 590–591 (2 Cir. 1963).

> " ' * * * when these elements are so united that by their reciprocal influence upon each other, or their joint action on their common object, they perform additional functions and accomplish additional results, the union is a true combination. While every element remains a unit, retaining its own individuality and identity as a complete and operative means, their combination embodies an entirely new idea of means, and thus becomes another unit, whose essential attributes depend on the cooperative union of the elements of which it is composed. Such a combination is a different invention from the elements themselves, whether considered in their separate or their aggregated state, the method of their co-operation in the combination being the result of the inventive act. Whether the elements are new or old, and whether they coact successfully or simultaneously is of no importance. To unite them in a new means by the exercise of inventive skill is invention, and renders the combination, as an entirety, the subject-matter of a patent. * * * ' Vol. I, Robinson on Patents, sections 154, 155, 156."; Pursche v. Atlas Scraper and Engineering Co., 300 F.2d 467, 473 (9 Cir. 1962).

■ This new patented combination demonstrates an improved novelty knife or tool possessing superior functional qualities, which can be economically manufactured and sold at minimal cost. It has accomplished a result which has long been sought in this crowded art. The patent is valid. It has been infringed by the defendant, Lighter Corporation of America, and contributorily infringed by The H. C. Cook Company.

The Findings of Fact and Conclusions of Law in accordance with Federal Rules of Civil Procedure, 52(a), 28 U.S.C. are

attached and incorporated herein by reference as Appendix "A".

A decree in accordance with these findings and conclusions shall be settled on notice.

## PART II.

## THE NAIL CLIPPER PATENT

### BACKGROUND

The plaintiff, The W. E. Bassett Company, was incorporated April 21, 1947, as the successor to the individually owned business of William E. Bassett, d/b/a W. E. Bassett Company, and had its principal office and place of business in the Town of Derby, Connecticut. During the Second World War, this company had done a considerable amount of subcontracting of metal manufacturing, producing parts for various ordnance plants. In 1946, it accepted a contract to manufacture clipper parts for McDermott Industries Incorporated and thereafter became interested in developing its own product. It hired two able tool and die makers, who had a great amount of experience in manufacturing clippers as former employees of The H. C. Cook Company, and proceeded to develop its own nail clipper and sundry products business.

The defendant, The H. C. Cook Company, commenced business in 1880, became incorporated in 1900 and maintained its principal office and factory in Ansonia, Connecticut, a town geographically adjacent to that in which the plaintiff has its plant and place of business. Since 1896, it has been manufacturing finger nail clippers, and this item became its primary business. The magnitude of its operation is best indicated by the fact, that at one time, it had become recognized as the world's leading supplier of this product.

### DISCUSSION OF ISSUES

On February 6, 1947, a nail clipper patent application was filed by William E. Bassett for a device, the essential elements of which consisted of laterally spaced lugs on a file eyeleted to the clipper opposite the jaws; and so arranged that the operating-lever was seated between said lugs, when in an inoperative position so as to hold it against lateral swinging movement. This application was approved and letters patent No. 2,-477,782 granted on August 2, 1949. Thereafter, on December 22, 1950, the patent was assigned for valuable consideration to the plaintiff corporation, PTX-24.

The original application carried seven (7) claims, only two of which were allowed; claims three (3) and five (5) respectively:

*"Claim #3:*

"A nail clipper of the character described comprising connected members having cutting jaws at one end normally held apart, a pivotally mounted operating lever for forcing the jaws together for the clipping operation and arranged to lie adjacent the outer surface of one of the members when in inoperative position, a file member pivoted to said latter member adjacent its other end to swing in a plane parallel to said member to and from a position on the outer side of said member under the lever, and said file member being provided with laterally spaced lugs arranged to receive the lever between them to hold it against lateral swinging movement."

*"Claim #5:*

" * * * and arranged to lie adjacent the top surface of the upper member when in inoperative position, said lever being adapted to swing laterally, a file member pivotally connected to the other end portion of said upper member to swing in a plane parallel to said member to and from a position on the upper side of said member, and laterally spaced lugs on the file member between which the lever seats to hold it against lateral swinging movements." PTX-25.

A careful study of the file history of the clipper patent in suit No. 2,477,782,

reveals on page 5 of the patent disclosure, the intended functional design of the inventors.

"On the opposite side edges of this file member adjacent its pivot 33, it is provided with a pair of upwardly extending lugs 35 between which the free end portion of the lever 23 may seat and be held when in the closed or inoperative position of Figs. 1 and 2, and prevent its inadvertently being swung from this position when carrying or not in use. The pivotal mounting for the file 30 is a fairly tight friction mounting so it is not loose to swing freely about the pivot, but it is tight enough for a frictional pivot so that the file is frictionally held in any position to which it may be swung, but still may be swung to any of these positions by the operator, as desired. By using a tubular eyelet for the pivot mounting of the file, the opening through the end of the device for mounting it on a key-ring or chain is maintained.

"It will be seen from the above that this novel construction and arrangement comprises a nail file and cleaning element which is normally covered or enclosed by the operating lever when in the inoperative position, and that this file in turn is provided with means for holding the lever against inadvertent movement laterally out of its closed position on the upper side of the upper jaw member, but that the lever may be readily swung to its operative position and the file may be readily exposed and swung to a position for use. *The lugs 35 on the file are preferably located relatively close to the pivotal mounting for the file, and also the free end of the operating lever, so that they will have the maximum holding effect on the lever and will effectively prevent its being swung laterally out of its closed position on the top of the file member during the carrying operation.*" (Emphasis added)

The claims allowed by the patent examiner include a combination of these elements: the clipper body, a reversible swingable lever, a swingable file restrained by friction, and cooperating lugs on the file to hold the lever laterally in place. (Tr. 2343). It is the plaintiff's claim that each of these elements considered individually may be considered quite commonplace in the prior art, but the combination of all co-acting together constitute a new invention. In other words, it is the plaintiff's position that taking into consideration the downward spring of the lever, the file lugs, the friction on the lateral movement of the nail file caused both by the eyelet attachment and the plane of the file in relation to the angle of the upper jaw member, together with a claimed dogging or binding co-action when lateral movement of the lever is attempted, constitute in its entirety a new and patentable device.

On July 25, 1950, Stephen J. Koczak, an employee of the defendant, The H. C. Cook Company, filed a new nail clipper application with the United States Patent Office for a patent serial No. 175,719, which alleged five (5) claims; all were rejected, as is more specifically set forth in PTX-35.

One of the essential differences between the plaintiff's patent No. 2,477,782 and the Koczak application is that the former uses laterally spaced lugs on the side of the file close to the pivot rivet, while the latter uses downwardly projecting flanges from the edges of the lever and midway from its pivot and outermost end, so as to engage the sides of the file member in such manner as to restrain both the file and the lever from lateral movement by means of a binding, wedging, or dogging holding co-action.

The patent office in rejecting the claim of the Koczak application took the position,

"to provide the lever member with the flanges instead of the file member would not amount to invention since it would involve a mere reversal

of parts without producing any new or unobvious result. * * * Further, to centrally locate the flanges on the lever would amount to a mere change of location and would not involve invention."

No appeal was taken from the final action of denial on September 25, 1951, and the defendant assignee of the patent application abandoned it. However, the defendant assignee continued to manufacture and sell the nail clipper with the downwardly projecting flanges on the lever member which it had been continuously doing since on or about January 1, 1951. It is the defendant Cook's adoption of this flange principle to its nail clipper products which has become the subject of this litigation.

The questions to be resolved by the Court are:

(1). Whether claim #3 of United States Patent No. 2,477,782 is valid;

(2). and, if valid, has it been infringed by the defendants.

(3). Whether the plaintiff is entitled to damages from date of issuance of clipper patent or is precluded from an accounting by reason of laches.

(4). Whether the plaintiff is entitled to a permanent injunction for the remaining term of said patents against further and continued infringement thereof.

(5). Whether defendants' infringement of the clipper patent was willful or culpably negligent, whereby plaintiff may be entitled to incurred damages and attorneys fees under Title 35 U.S.C. §§ 284, 285 (1952).

The defendant asserts that the plaintiff's clipper patent is invalid, because it does not meet the statutory tests of patentability. It represents that the claims of invention are not described in the patent; that the patented item was anticipated in the prior art; and finally, that the claimed invention was obvious to a competent mechanic in the clipper art.

On the other hand, the plaintiff relies and places great stress on the presumption of validity imposed by statute upon a duly issued patent, T. 35, U.S.C. § 282.

"The presumption of validity relieves the patent holder of the burden of establishing that validity as a requisite for the successful maintenance of an infringement action, and places the burden of establishing invalidity on the alleged infringer who asserts it. * * *

"More than that, the most that can be said of the presumption is that it requires that reasonable doubt on the question of validity be resolved in favor of the patent holder. * * *

"The statute does not require that the presumption be accorded the weight of actual evidence or that the use of the presumption should affect a decision of invalidity that would otherwise be reached with confidence." Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105 (2 Cir.1962).

Sections 101, 102, and 103 of Title 35 establish the statutory standards of patentability and provide in part as follows:

§ 101. Inventions patentable.

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

§ 102. Conditions for patentability.

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the intention thereof by the applicant for a patent, or

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

"(c) * * *

"(d) * * *

"(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or * * *".

§ 103. Conditions for patentability.

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The defendant takes the position that had the patent examiner in this instance had the full record before him, he would not have originally allowed the plaintiff's patent, because it does not qualify under 35 U.S.C. §§ 101, 103. An examination of the file history, PTX-25, indicates that only two references were placed in the record by the patent examiner at the time of his search, as being relevant to the prior art. These included Carter Patent No. 1,436,010, issued November 21, 1922, division 132–75.5; and Seymoure Patent No. 1,836,-557, issued December 15, 1931, division 132–75.5. The Carter patent refers to the defendant's Old Gem, Jr. device and says nothing in the text of the patent about retaining the swingable file by any kind of interaction of the operating lever. (Tr. 2227). Likewise, the Seymoure patent discloses no means for retaining the operating lever from turning, when it is in its inoperative or folded position. In turn, PTX-35, the file history on the defendant's accused device, makes reference to the plaintiff's patent alone, as the basis for its rejection by the patent office.

Any fair analysis of the issues in this case must consider the naked elements of the plaintiff's patent, without regard to the more recent attractive new designs, and metal finishes as demonstrated in subsequent design patents, and which do possess consumer eye appeal. (PTX-15–23 inclusive).

In analyzing the question of the validity of the patent as revealed in the patent disclosure and claims, it is well to be mindful of the fact that the functional construction of the clipper jaws, the rivet assembly, the reversible lever with the fulcrum design, (which causes a downward spring in the reversible lever when it is sprung to a non-operational position) are admitted by all parties to be 'not accused' in this litigation. In other words, the use by either party of these functional elements alone was proper and lawful in their respective products. So also the eyeleting of a swingable nail file on the upper clipper jaw at the extreme end opposite the jaws was not an issue and it mattered not whether the file was attached, so as to create a holding friction at the rivet or a friction caused by rubbing against the upper jaw, by a variance in the lateral plane between the angle of the jaw and the file from the eyelet end toward the jaws.

The real question is whether or not the combination or co-action of these commonly known elements in the prior art plus the addition of the lugs, provides the basis for such a combination as would warrant the issuance of a valid patent. Is this technique of retaining two swingable members, each rotating on a third member by means of lugs on one of the members restrained by friction and engaging the other member, such a combination as to be properly patentable.

Nowhere in the file history of the clipper patent, PTX-25, is there claimed or disclosed any combination of elements or patents which would cause the file to be held in line with the clipper body by the co-action of the operating lever when inoperative. While the plaintiff attempted to create during the course of the trial,

a theory to establish his claim of a new "binding or wedging function" or "dogging action" for the co-action of the component parts, the patent file does not sustain it. Page 5 of the plaintiff's patent disclosure reads in part:

"* * * this file in turn is provided with means for holding the lever against inadvertent movement laterally out of its closed position on the upper side of the upper jaw member, but that the lever may be readily swung to its operative position and the file may be readily exposed and swung to a position for use."

"The lugs 35 on the file *are preferably located relatively close to the pivotal mounting for the file, and also the free end of the operating lever, so that they will have the maximum holding effect on the lever and will effectively prevent its being swung laterally out of its closed position on the top of the file member during the carrying operation."* (Emphasis added).

This wordage is further explained and restricted in meaning and intention by the plaintiff's patent claims #3 and #5 hereinbefore referred to.

The nail clipper art is admittedly a crowded art. Improvements claimed as inventions must be strictly construed and held within the strict limitation of the claims and the disclosures made. The plaintiff's contention that the "lugs" could be moved down the file so as to engage the operating lever in a new type of "binding action" is directly contrary to the stated patent claims and the intent of the claimant as revealed in the disclosure. Nowhere is there any mention of geometric factors which must be considered if the lugs are to be used for such a purpose. As stated supra, the pertinent part of the disclosure reads in part:

"The lugs * * * are preferably located relatively close to the pivotal mounting for the file, and also the free end of the operating lever, so that they will have the maximum holding effect on the lever * * *".

The claimed new element, the lugs or vertical projections on the file, embodies a basic mechanical principle. It simply provides a fixed holding action for the operating lever when the end is seated between them. It is not such a novel development when used in conjunction with the other elements as to constitute a legal invention, and is not entitled to a patent monopoly.

"The terms of the statute draw a clear line between devices which are true discoveries and devices which would 'have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.' 35 U.S.C.A. § 103. If an improvement is to obtain the privileged position of patent protection, more ingenuity must be exercised in its creation than merely that which is possessed by an ordinary mechanic acquainted with the business and skilled in the art." Gross v. JFD Manufacturing Co., 314 F.2d 196, 199 (2 Cir. 1963).

In 1914, a patent No. 1,085,569 was issued on a nail clipper to H. LaCasse (See PTX-114, Index L and PTX-112, PTX-112A–C inclusive) which provided in part the following disclosure:

"the spaced projections 24 which serve to hold there between and guard the pointed portion 18 of the member 17 when the parts of the device are in compacted or disuse condition, and it is formed forwardly of the projections 24 with a depressed portion 25 which facilitates taking hold of the member 17 to move it away from the jaws * * *".

Claim #2 thereof also provides: "* * * and spaced projections on one of the jaw members for the purpose set forth".

The lugs on the file in the claimed invention embody the same basic principle revealed and claimed in the LaCasse patent, to hold the pointed end of the oper-

ating lever. This is relevant prior art, notwithstanding the fact that its swingable lever operates on what is referred to as a displaced axis.

On March 15, 1932, a patent No. 1,849,592 was granted on a new nail clipper to M. Schnefel, (DE 61 and PTX-114, index O) which made the following claim:

"A finger nail clip, comprising two co-acting channel members, the channels of the said members opening in the same direction, one of the said members being constructed to occupy the channel of the other member, * * * and the said lever member when in its closed position occupying the channel of the said member which occupies the channel of the other member."

The principle in the foregoing Schnefel patent is nothing more than an elongated channel or flange lengthwise of the lever utilized for its lateral holding action of the lever. The lugs in the present litigation, although much briefer, embody the same basic principle. The mere fact that they are applied to the file rather than to the clipper-body do not provide such evidence of inventive skill as to beget patentability.

The foregoing patents embody the essential holding functions of the "lugs", which are claimed to be the basis of invention in the plaintiff's patent. When these "lugs" are placed close to the pivot eyelet, as the patent requires, the "binding action" or "dogging action" vanishes. The interplay or coaction of the "lugs" and the tip end of the operational lever actually creates a "gearing action" as lateral pressure is applied on the lever. (DE 68). The "dogging or wedging action" which the plaintiff claims to be the

functional basis for the granting of the patent, becomes a nebulous entity.

The plaintiff's pending action against Revlon, Inc., December 29, 1960 (S.D. N.Y.) DE 27, (paragraph 13) was based in part on alleged patent infringement. It claims that Revlon's use of the "lugs" affixed to the rivet itself for purposes of holding action on the operating lever infringed its patent. Certainly, such a claim is inconsistent with the plaintiff's position in the present action, because the alleged Revlon infringement is clearly one of holding action and does not embody any dogging or wedging phenomenon. It is to be noted further that the newer and more advanced clipper item of the plaintiff, place the lugs even closer to the eyelet on the file, so as to be at opposite locations across the eyelet. (PTX-19).

█ Thus, these "lugs" actually were intended and claimed to perform only a simple holding action for the clipper lever. Such a function as applied to the swingable file is not basically novel. The principle is used in many mechanical devices. In the clipper art, it has been previously adopted in the foregoing LaCasse patent No. 1,085,569 and the Schnefel patent No. 1,849,592. Therefore, this Court finds that claim #3 of United States Patent No. 2,477,782 is not valid. There is therefore no reason to discuss the questions of infringement or laches.

The Findings of Fact and Conclusions of Law in accordance with Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C. are attached and incorporated herein by reference as Appendix "B".

A decree in accordance with these findings and conclusions shall be settled on notice.